## FRED O. RICHARDSON AS ADMINISTRATOR, ETC. v. FRED WEISS AND ANOTHER.

### JOSEPH WEISS, APPELLANT.[1]

June 23, 1922.

No. 22,712.

**Driver of automobile negligent in passing another car.**

1. The evidence referred to in the opinion justified the jury in finding that the driver of an automobile operated it negligently when he had overtaken and was passing the automobile driven by plaintiff's intestate.

**Owner of family automobile liable for son's negligence.**

2. The evidence also justified the jury in finding that the automobile negligently operated was kept for family purposes and that the owner had sanctioned its use by his son and was liable for his negligence in operating it.

[1]Reported in 188 N. W. 1008.

Action in the district court for McLeod county by the administrator of the estate of James W. Richardson, deceased, to recover $7,500 for the death of his intestate. The case was tried before Tifft, J., who at the close of the testimony denied defendants' motion for a directed verdict and defendant Joseph Weiss' separate motion for a directed verdict, and a jury which returned a verdict for $1,800. From an order denying his motion for judgment notwithstanding the verdict or for a new trial, defendant Joseph Weiss appealed. Affirmed.

*P. W. Morrison* and *C. G. Odquist,* for appellant.
*Sam G. Anderson* and *F. R. Allen,* for respondent.

LEES, C.

Plaintiff's intestate, James W. Richardson, while driving an automobile on a public highway in this state, was overtaken by the defendant Fred Weiss, driving his father's automobile. Fred undertook to pass and struck the Richardson car. It left the road, overturned, and Mr. Richardson was pinned under it and sustained injuries from which he died. This action was brought by his personal representative against the father and son to recover damages under the death statute.

The complaint charged that Mr. Richardson's death was caused by the negligence of Fred Weiss; that the car he drove was owned and kept by his father for the use of his family and that Fred was a member of the family and had authority to use the car on the occasion in question. The jury returned a verdict in plaintiff's favor. The defendant Joseph Weiss made the usual blended motion for judgment or a new trial and has appealed from an order denying it. But two questions are presented: (1) Was Fred negligent in the operation of the car? (2) Does the evidence justify a finding that Fred was operating the car with the authority of his father?

1. The Richardson car was traveling west on a good road, the traveled portion being 24 feet wide. There was a slight grade at the place of the accident and the roadway was somewhat above the surface of the ground on either side. Whether Fred gave any signal before he tried to pass was one of the disputed questions in the

case. When he turned out to pass, he discovered another car coming toward him. He believed it was too late to stop and that his only chance to avoid a collision was to drive between the two cars. In attempting to do so his car came in contact with the Richardson car with sufficient force to cause it to run off the roadway. He admitted that the road was dusty, that the sun was in his eyes and his vision obscured, and that he did not see the car coming toward him until it was close upon him and he had to act in an emergency. There was testimony that after the accident he admitted that the brakes on his car were defective and for that reason he could not stop. In our judgment, the evidence was clearly sufficient to justify the jury in finding that Fred was negligent.

2. At the time of the accident the Weiss family consisted of the defendant, his wife and their two sons, Henry, 25 years old, and Fred, 20 years old. In July, 1916, the father purchased his first car. No one drove it except the two sons. It was kept in an unlocked shed near the house and was used as a family car for pleasure driving and in doing business errands. During the season it was driven once to twice a week for one purpose or another. With their father's permission, the boys used it to go to dances in the neighborhood. In 1917 Fred entered the United States navy and was away from home until the spring of 1919. In the meantime the first car was exchanged for another, which was kept in the same place and used for the same purposes as the first.

On August 19, 1919, there was a gathering at Hutchinson to celebrate the homecoming of exservice men living in that locality. Fred wished to attend, and the evening before asked his father whether he might take the car to drive to Hutchinson the next day. His testimony as to his father's reply contains conflicting statements. In the course of the direct examination he said his father told him to go with someone else if he could, and that he then arranged to go with a neighbor named Donney. On cross-examination he qualified this statement by saying that his father told him he could not take the car. His father testified that when either of the boys wanted to go out on a pleasure trip, they had to ask him for the car; that they had been told not to take it without his permission; and

that when Fred asked for the car to go to Hutchinson he and his wife refused to let him have it and Fred told them he would go with some neighbors' boys. Mr. Weiss left home on the morning of the nineteenth and shortly thereafter there was a telephone call from Donney. Fred's mother called him to the phone and he was informed by Donney that he could not take him to Hutchinson owing to a change in his plans. Fred at once left the house, got the car and drove away, going to the home of his brother-in-law where he got an extra tire, and to Glencoe where he purchased gasolene, and then proceeded on his trip to Hutchinson. His mother was not called as a witness. Whether she objected or consented to his taking the car is not disclosed by the record.

Upon this evidence, it is contended that it conclusively appears that Fred was wholly without authority to take the car. The question is a close one, but we have concluded it was one for the jury.

In a general way the facts do not differ substantially from those in Jensen v. Fischer, 134 Minn. 366, 159 N. W. 827, and Johnson v. Schuler, supra, page 137, 188 N. W. 271, where the father was held liable notwithstanding his positive uncontradicted assertion that his son had taken the car contrary to his instructions. The suggestion in the Jensen case that self-interest naturally prompts the defendants in cases such as this to protect the responsible defendant by testimony that the use of the car was forbidden is applicable here. Equally applicable is the statement that because there is no conflict in the testimony the case does not necessarily become one for the court instead of one for the jury. It is passing strange that these young men, living at home and on friendly terms with their parents, should be subject to the inflexible rule that they must never take the car without express permission from their father. Moreover, if Fred deliberately disobeyed an express order given the night before, he would hardly have gone about it so openly, for his mother would almost certainly have interfered.

The liability of the owner of an automobile, kept for family purposes, for injuries resulting from its negligent operation when used by a member of his family, has gradually been extended. See note 5 A. L. R. 226. The doctrine has developed step by step until it

has now reached a stage where this court holds that when the head of a family makes it his business to furnish an automobile to provide recreation and pleasure for the members of the family, he is responsible for its negligent use by any one of the family having his permission to drive it, Kayser v. Van Nest, 125 Minn. 277, 146 N. W. 1091, 51 L. R. A. (N. S.) 970; Uphoff v. McCormick, 139 Minn. 392, 166 N. W. 788; Johnson v. Evans, 141 Minn. 356, 170 N. W. 220, 2 A. L. R. 891; Johnson v. Smith, 143 Minn. 350, 173 N. W. 675; Plasch v. Fass, 144 Minn. 44, 174 N. W. 438, 10 A. L. R. 1446, and it is broad enough to comprehend a case such as this.

Order affirmed.