EVA SMITH, widow of Frank Smith, plaintiff below, plaintiff in error, *v.* TIMOTHY D. CALLAHAN, defendant below, defendant in error.

(*October* 31, 1928.)

WOLCOTT, Ch., HARRINGTON and RICHARDS, J. J., sitting.

*Robert G. Harman* and *Edwin R. Cochran, Jr.*, for plaintiff in error.

*Everett B. Borton* and *Elwood F. Melson* for defendant in error.

Supreme Court, No. 3, January Term, 1928. No. 117, January Term, 1927.

WOLCOTT, Chancellor, delivering the opinion of the court, after making the foregoing statement:

The assignments of error are five in number. They all go to the propriety of the action of the court below in directing a verdict and rendering judgment thereon in favor of the defendant below. In view of the disposition made of the case in the court below, we must assume that the injury was due to the negligence of the son. Assuming this, the sole question which the assignments of error present for our consideration is this: Can a father be held liable in damages for a tort founded upon the negligent operation of an automobile by his minor son who resides in his father's home, when the automobile was kept by the father for the use of his family and used by members of his family, including the minor son, for their own pleasure with his consent?

This question has received conflicting answers in various jurisdictions. The Superior Court in this state whenever it has had occasion to discuss it has given to it a negative answer. In *Cannon v. Bastian*, 31 *Del.* (1 *W. W. Harr.*) 533, 116 *A.* 209, the court by way of obiter indicated the view that the father could not be held

liable in such a case as the question puts; and in the case of *Cerchio v. Mullins,* 33 *Del.* (3 *W. W. Harr.*) 245, 138 *A.* 277, it appears that the point was directly involved and decided in favor of the father's non-liability.

The rule in this state, therefore, in so far as the Superior Court can define it, is well settled that a father cannot be held liable for his minor son's negligent driving of an automobile owned by the father and permitted by him to be used by his family, when alone and in pursuit of his own pleasure, notwithstanding he is a member of his father's family and as such has his father's consent to make use of the vehicle.

This court is now asked to review the correctness of this rule and to overthrow it. Courts elsewhere are in decided conflict upon the question thus presented. We deem it unnecessary to refer in detail to the many cases dealing with the question. We simply cite some of them at this point and shall then proceed to discuss various propositions and theories which, a reading of the cases will disclose, are the subjects of discussion running through all of them.

Among the cases holding to the rule of liability are the following: *King v. Smythe,* 140 *Tenn.* 217, 204 *S. W.* 296, *L. R. A.* 1918F, 293; *Schwartz v. Johnson,* 152 *Tenn.* 586, 280 *S. W.* 32, 47 *A. L. R.* 323; *Graham v. Page,* 300 *Ill.* 40, 132 *N. E.* 817; *Benton v. Regeser,* 20 *Ariz.* 273, 179 *P.* 966; *Allison v. Bartelt,* 121 *Wash.* 418, 209 *P.* 863; *Birch v. Abercrombie,* 74 *Wash.* 486, 133 *P.* 1020, 50 *L. R. A.* (*N. S.*) 59; *Jones v. Cook,* 90 *W. Va.* 710, 111 *S. E.* 829; *Aggleson v. Kendall,* 92 *W. Va.* 138, 114 *S. E.* 454; *Stevens v. Luther,* 105 *Neb.* 184, 180 *N. W.* 87; *Johnson v. Evans,* 141 *Minn.* 356, 170 *N. W.* 220, 2 *A. L. R.* 891; *Kayser v. Van Nest,* 125 *Minn.* 277, 146 *N. W.* 1091, 51 *L. R. A.* (*N. S.*) 970; *Johnson v. Smith,* 143 *Minn.* 350, 173 *N. W.* 675; *Richardson v. Weiss,* 152 *Minn.* 391, 188 *N. W.* 1008; *Payne v. Leininger,* 160 *Minn.* 75, 199 *N. W.* 435; *Baldwin v. Parsons,* 193 *Iowa* 75, 186 *N. W.* 665; *Boes v. Howell,* 24 *N. M.* 142, 173 *P.* 966, *L. R. A.* 1918F, 288; *Winn v. Haliday,* 109 *Miss.* 691, 69 *So.* 685; *McNeal v. McKain,* 33 *Okl.* 449, 126 *P.* 742, 41 *L. R. A.* (*N. S.*) 775; *Marshall v. Taylor,* 168 *Mo. App.* 240, 153 *S. W.* 527; *Denison v. McNorton*

(*C. C. A.*), 228 *F.* 401; *Crittenden v. Murphy,* 36 *Cal. App.* 803, 173 *P.* 595; *Davis v. Littlefield,* 97 *S. C.* 171, 81 *S. E.* 487; *Hutchins v. Haffner,* 63 *Colo.* 365, 167 *P.* 966, *L. R. A.* 1918A, 1008; *Stowe v. Morris,* 147 *Ky.* 386, 144 *S. W.* 52, 39 *L. R. A.* (*N. S.*) 224; *Ulman v. Lindeman,* 44 *N. D.* 36, 176 *N. W.* 25, 10 *A. L. R.* 1440.

Among the cases in opposition to the rule of liability are the following: *Arkin v. Page,* 287 *Ill.* 420, 123 *N. E.* 30, 5 *A. L. R.* 216; *Watkins v. Clark,* 103 *Kan.* 629, 176 *P.* 131; *Zeeb v. Bahnmaier,* 103 *Kan.* 599, 176 *P.* 326, 2 *A. L. R.* 883; *Myers v. Shipley,* 140 *Md.* 380, 116 *A.* 645, 20 *A. L. R.* 1460; *Van Blaricom v. Dodgson,* 220 *N. Y.* 111, 115 *N. E.* 443, *L. R. A.* 1917F, 363; *McFarlane v. Winters,* 47 *Utah* 598, 155 *P.* 437, *L. R. A.* 1916D, 618; *Cohen v. Meador,* 119 *Va.* 429, 89 *S. E.* 876; *Blair v. Broadwater,* 121 *Va.* 301, 93 *S. E.* 632, *L. R. A.* 1918A, 1011; *Doran v. Thomsen,* 76 *N. J. Law* 754, 71 *A.* 296, 19 *L. R. A.* (*N. S.*) 335, 131 *Am. St. Rep.* 677; *Smith v. Jordan,* 211 *Mass.* 269, 97 *N. E.* 761; *Weiner v. Mairs,* 234 *Mass.* 156, 125 *N. E.* 149; *Smith v. Weaver,* 73 *Ind. App.* 350, 124 *N. E.* 503; *Parker v. Wilson,* 179 *Ala.* 361, 60 *So.* 150, 43 *L. R. A.* (*N. S.*) 87; *Linville v. Nissen,* 162 *N. C.* 95, 77 *S. E.* 1096; *Wilson v. Polk,* 175 *N. C.* 490, 95 *S. E.* 849; *Loehr v. Abell,* 174 *Mich.* 590, 140 *N. W.* 926; *Pratt v. Cloutier,* 119 *Me.* 203, 110 *A.* 353, 10 *A. L. R.* 1434; *Mast v. Hirsh,* 199 *Mo. App.* 1, 202 *S. W.* 275; *Schumer v. Register,* 12 *Ga. App.* 743, 78 *S. E.* 731; *Woods v. Clements,* 113 *Miss.* 720, 74 *So.* 422, *L. R. A.* 1917E, 357; *Elms v. Flick,* 100 *Ohio St.* 186, 126 *N. E.* 66.

We now proceed to notice and briefly comment upon the various theories and propositions appearing in the cases which bear upon the question before us. All the cases, those for as well as those against the rule of liability are, generally speaking, in harmony upon certain propositions.

One of those propositions is that there is nothing in the mere relationship of parent and child upon which the law can lay hold as fixing liability upon the father. Indeed in some of the cases the rule of liability is applied where the relationship of parent and child is absent. For instance, liability was held to attach to the

car owner when the negligent driver was his wife, *Stickney v. Epstein*, 100 *Conn*. 170, 123 *A*. 1; *Hutchins v. Haffner*, 63 *Colo*. 365, 167 *P*. 966, *L. R. A*. 1918A, 1008; *Ulman v. Lindeman*, 44 *N. D*. 36, 176 *N. W*. 25, 10 *A. L. R*. 1440; *Plasch v. Fass*, 144 *Minn*. 44, 174 *N. W*. 438, 10 *A. L. R*. 1446; and in *Jones v. Cook*, 90 *W. Va*. 710, 111 *S. E*. 828, the owner was said to be liable where the tortfeasor was his stepchild. The common-law rule to the effect that, in so far as the mere relationship of parent and child can affect the question, a parent is not liable for the torts of his child unless committed with his authority, express or implied, remains undisturbed therefore by the line of decisions which hold the father liable in such cases as the instant one. In *Shockley v. Shepherd*, 9 *Houst*. 270, 32 *A*. 173, a father's liability for negligence of his son in driving a horse was denied and the rule was stated generally to be that a father's liability for his son's wrongful act exists only in case the son was in the father's service and acting in that capacity as his agent.

Another point upon which the cases agree is that an automobile is not an instrumentality of inherent danger, and that liability of the father-owner cannot therefore be predicated on the suggestion that by allowing the child to use the car he thereby is to be regarded as having joined in the potential commission of torts.

The theory upon which the cases sustaining the father's liability rely, is upon analysis founded, not upon the father's status as father, but rather upon his status as the head of a family, furnishing to or for the family an automobile to be used by its members for their own pleasure and convenience. When the automobile is so furnished, many courts have read into the situation a relationship of master and servant or principal and agent, the master or principal being the head of the family, the servants or agents being the family members and the business contemplated to be attended to by the servants or agents in behalf of the master or principal being the entertainment, pleasure or convenience of themselves. We have thus described the agency recognized by those courts as emanating from the father as head of the household, because in all the cases examined by us the defendant happened as a

matter of fact to be the family head. If, however, a case should arise in which the car was supplied, not by the father and head of the family, but we will say by a son who gave permission to all members of the household to use it for their convenience and pleasure, we do not see how the courts which adhere to the family use and service doctrine could avoid following the logic of the doctrine to the conclusion that the son, in the supposed case, would be liable for the tort committed by another member of the family while driving the car. If the driving member should happen to be the father, the result would be an interesting not to say a curious one. The only possible escape from such a result would be for the court to say that the law would force the relationship of agency upon the father because of some duty on his part to supply his family with an automobile; but, there being no duty on the part of a son to furnish a family car, a relationship of agency could not be affixed to him. Such a distinction would be sound if the agency were a corollary to a duty. But we cannot conceive that the furnishing of a car for family use is a matter of duty on the part of the father and family head. An agency to purchase necessaries for the family is evolved by the law from the father's duty to his wife and children. Certainly an automobile for family use cannot be said to be a thing which duty exacts of the father or husband to supply. If a dealer should undertake to collect from a father the purchase price of an automobile ordered by any member of the family, or even by all of them, for their pleasure and convenience without the father's authority, there can be no doubt but that the non-necessary character of the car and the lack of the father's duty to supply it would defeat the dealer's claim. This emphasizes the lack of anything in the way of a duty as a basis upon which to rest the assumed agency which courts, adhering to the family use or service doctrine, have conceived to exist between the head of the family on the one hand and its various members on the other. If then the agency does not exist by reason of any duty to supply the car, it must follow that it exists, if at all, because it has been voluntarily assumed, and we can conceive of nothing in cases whose facts are like the one before us upon which to predicate a voluntary assump-

tion of the relationship of agency unless it be the bare fact of the acquisition of the car and the placing of it at the family's disposal. Now if this be so, it is apparent that, not parenthood or the being a family head, but the gratuitous act of supplying a car for the family use is the thing out of which the law creates the agency. How then can the reason which fastens liability on the father who supplies a family car fail to fasten a like liability on any other competent member of the family for doing the same thing? If as some of the courts say, the father who furnishes a car for the use of the family does so in order that they might use it to transact his business, to wit, the business of entertaining or giving pleasure to themselves, we are unable to see why it may not with equal force be said that if any other member of the family supplies a car for the family use, he also has voluntarily made the entertainment, convenience and pleasure of the family his business. If liability for negligent operation of the car is incurred in the one case, we are unable to see why it should not be incurred in the other. Indeed, in point of logic and reason it is difficult to see why a bailor of an automobile may not with an equal show of plausibility be held to the same liability for the negligent conduct of his bailee in the car's operation, for it would seem that if one lends his car to a friend to use for his own pleasure, he has done nothing more than the head of a family does when he lends his car to his wife or children to use for their pleasure. If the lending of the car in the latter case can be said to be in the furtherance of the father's business of pleasing and entertaining his family, the lending of the car to the bailee in the former case can with equal force, it would seem, be said to be in the furtherance of the bailor's business of pleasing or conveniencing his friend. Yet, so far as we are advised no court has ever gone so far, nor we believe ever will go so far, as to say that a bailor of an automobile is responsible for its tortious operation by his bailee. It seems to us however that in order to avoid going to this extreme length, the courts, which accept the theory of an agency as the predicate for liability in cases of the pending sort, must deliberately repudiate the logic of their decisions at some point short of its consistent application. If considerations of public

policy underlay the doctrine of family use and its corollary of liability, there would be no logical difficulty in circumscribing the field of the doctrine's application. But if the *ratio decidendi* of the courts' conclusions is that of an agency of the nature referred to, we cannot see how, upon analysis of that agency, its rational consequences can be stopped short of lengths which, thus far at least in the law's development, are clearly untenable. Thus the theory of an agency which underlies cases of the instant kind, if accepted, is in our judgment calculated to prove quite embarrassing to the courts accepting it if consistency and harmony is desired in the logical application of legal principles to pertinent but varied fact situations.

But, after all, can it be said that when a father becomes an owner of an automobile and allows the members of his family to use it, they, when they are out riding for their own convenience and pleasure and often without even his knowledge, can be said to be transacting his business? Notwithstanding the volume of eminent judicial opinion to the contrary, we are unable to bring our minds to the conclusion that in pleasing themselves the members of the family can be said to be acting as agents in transacting or furthering the business of the head of the family. That the pleasure, comfort and convenience of the members of a man's household are matters of concern to him cannot of course be denied. This concern is not alone collective in its operation. It is individual and personal, and applies as well to each of the family members as to the collective group. We agree entirely with those courts which hold that no sound distinction in reason can be drawn between those cases where only one member of the family is engaged in serving his pleasure by driving a car alone and those where more than one member of the family are in the vehicle, for if the father's business is being transacted in the latter case it is likewise being transacted in the former. Now if one member of the family is transacting the business of the family head when he is serving his own individual purposes by using the instrumentality of an automobile supplied by a father for the family's entertainment, why would he not be similarly transacting the father's business if he used for his own

entertainment or recreation any other instrumentality supplied by the father for that purpose? Among a great variety of instrumentalities purchased by a father for the use of any or all members of his family as means of entertainment, pleasure and convenience, certainly it would be difficult for reason to assign to one a character indicative of business employment in the father's behalf and deny such character to others. Thus if a son in using his father's automobile for his own pleasure with his father's consent can be said to be engaged in acting as his father's agent or servant in the furthering of his father's business, he must, it would seem, be acting in a like vicarious capacity if he used for his own pleasure any other article supplied by his father for his entertainment. We can see no escape from this conclusion. And yet we venture to assert courts which apply the logic to the case of an automobile, would hesitate long before applying it to the case of a baseball bat for instance supplied by a father for the recreation of his boys. Imagination might run on indefinitely and suggest other instrumentalities supplied by fathers and heads of families for the use of all or a part of the members of his household, but which courts would be most reluctant to say were being employed in the father's business when being used for the purposes they were intended to serve.

The word "business" is a word of varied meaning. In common speech it is often used as synonymous with "concern" or "interest" as when one says he will make a certain thing his business to attend to or look into. In so far as the comfort, pleasure and convenience of a man's family are matters of concern and interest to him, it is not improper to say that it is his business to promote them. This use of the word, however, is far removed from the legal connotations which we understand to inhere in it when we speak of the employment by one of an agent to promote or transact business in his behalf. If A. acts at B.'s request in the furtherance of B.'s business, A. is an agent for whose acts B. is responsible. That is a proposition which generally speaking is sound. Simply because the interest and concern of a father in his children's recreation and amusement may in one sense of the word be spoken of as a matter of his business, it does not follow that it is his business in every

sense of the word, so that all the legal incidents attaching to the idea in its latter meanings must attach to it in its former meaning. A syllogism which deduced its conclusion from a major premise containing the word "business" in one of its meanings and a minor premise containing the same word in another of its meanings, would present the fallacy known to the logicians as that of the ambiguous middle.

If, in such cases as we are dealing with, the son is the agent of the father in the transaction of the father's business, we have what appears to us to be an anonymous type of agency. Ordinarily an agent is engaged in doing something for the principal's benefit and in the principal's stead. Yet here in this case, the so-called agent was acting solely for his own benefit and completely without the knowledge of his supposed principal. This we say appears to us to be an anomalous sort of agency. It is one where the principal's business is to permit his agent to do something for himself. The Court of Appeals in *Van Blaricom v. Dodgson*, 220 *N. Y.* 111, 115 *N. E.* 443, *L. R. A.* 1917F, 363, pointed out the anomalous character of such an agency as is here referred to by using the following language: "On its face a proposition seems to be self contradictory which asserts that a person who is wholly and exclusively engaged in the prosecution of his own concerns is nevertheless engaged as agent in doing something for some one else. It has always been supposed that a person who was permitted to use a car for his own accommodation was not acting as agent for the accommodation of the owner of the car."

We agree with the following taken from *Watkins v. Clark,* 103 *Kan.* 629, 176 *P.* 131: "The purchase of the automobile by the defendant for the use of his family, including his daughter, operated as a gift to them of the right to use it. When using it to accomplish his purposes, whether business or pleasure, they represent him, but when they exercise their privilege and use it to accomplish their own distinct purposes, whether business or pleasure, they act for themselves, and are alone responsible for their negligent conduct."

In the instant case the son made use of the privilege accorded to him by the father to use the car, in order to accomplish his own

distinct purpose of pleasure, and in doing so he acted for himself and in no sense as the servant or agent of his father. Wherefore, in so far as any theory of agency is concerned the father cannot be held responsible for the son's negligent conduct.

We have discussed at length the theory of an agency as the foundation on which the father's suggested liability rests. This is the principal theory advanced by the plaintiff below, plaintiff in error.

Some courts, however, have thrown out other theories upon which to rest the father's liability, and among these the plaintiff in error relies upon that one which is to the effect that considerations in the nature of public policy ought to impose liability on the father. This theory is most forcefully perhaps suggested by the Supreme Court of Tennessee in the case of *King v. Smythe*, 140 *Tenn.* 217, 204 *S. W.* 296, *L. R. A.* 1918F, 293. The language of the court in that case is as follows:

" * * * As a matter of practical justice to those who are injured, we cannot close our eyes to the fact that an automobile possesses excessive weight, that is capable of running at a rapid rate of speed, and when moving rapidly upon the streets of a populous city, it is dangerous to life and limb and must be operated with care. If an instrumentality of this kind is placed in the hands of his family by a father, for the family's pleasure, comfort, and entertainment, the dictates of natural justice should require that the owner should be responsible for its negligent operation, because only by doing so, as a general rule, can substantial justice be attained. A judgment for damages against an infant daughter or son, or a son without support and without property, who is living as a member of the family, would be an empty form. The father, as owner of the automobile and as head of the family, can prescribe the conditions upon which it may be run upon the roads and streets, or he can forbid its use altogether. He must know the nature of the instrument and the probability that its negligent operation will produce injury and damage to others. We think the practical administration of justice between the parties is more the duty of the court than the preservation of some esoteric theory concerning the law of principal and agent. If owners of automobiles are made to understand that they will be held liable for injury to person and property occasioned by their negligent operation by infants or others who are financially irresponsible, they will doubtless exercise a greater degree of care in selecting those who are permitted to go upon the public streets with such dangerous instrumentalities. An automobile cannot be compared with golf sticks and other small articles bought for the pleasure of the family. They are not used on public highways, and are not of the same nature of automobiles."

The Supreme Court of Illinois, after having, as it seems to us, rejected the reasoning of the Tennessee court set forth in the fore-

going excerpt (*Arkin v. Page,* 287 *Ill.* 420, 123 *N. E.* 30, 5 *A. L. R.* 216), in the later case of *Graham v. Page,* 300 *Ill.* 40, 132 *N. E.* 817, accepted the same as the basis of its decision.

Because the views adopted by the Tennessee court are such as to appear to give to the case of *King v. Smythe* the character of a leading one, our inability to accept those views prompts us to indulge in a short critical though respectful examination of them. In the first place we are impressed by the fact that that portion of the opinion set forth in the foregoing extract which emphasizes the dangerous character of the automobile when used on the public highways, is in decided conflict with what the court at a previous point speaks of as "well established," namely, "that an automobile is not a dangerous agency, so that its owner is liable for injuries to travellers on the highways inflicted while being driven by another, irrespective of the relationship of master and servant, or principal and agent." Thus, the dangerous nature of the instrument upon which the court bases the thought of owner-liability as a matter of public policy, is conceded to be contrary to established authority. This is again apparent from the court's language at yet another and earlier place in its opinion where the following appears: "Under well-settled principles, the defendant's liability must depend upon whether the son operating the automobile was his servant and engaged upon his business at the time the negligence occurred."

In view of the concessions as to what is well established and settled, it is manifest that if such considerations of public policy as the Tennessee court described are accepted as the *ratio decidendi* of the rule holding the automobile owner to a liability, then one thoroughly well-settled proposition must be rejected entirely, viz., that an automobile is a thing inherently dangerous to operate; and another proposition, viz., that a relationship of master and servant or principal and agent is necessary to be shown against the defendant, which courts upholding the rule of liability have so painstakingly developed and adhered to, is after all a mere surplusage and non-essential. The fact, however, that the many courts favoring liability have expressly grounded their decisions upon the fact of an agency, shows clearly that if the sole basis of recovery were the

inherently dangerous nature of the instrument such courts would have rejected the rule of liability. This is especially so, when it is remembered that in the opinions the fact of an agency is sought out only after the non-dangerous character of the instrument has been expressly asserted.

It appears, therefore, that, by the overwhelming weight of authority, established by a great number of cases favoring the rule of liability, as well as those opposed thereto, considerations of public policy based on the inherently dangerous character of an automobile are not a sufficient basis upon which to predicate liability of an owner for injury caused by its negligent operation by another, whether the operator be a member of the owner's family or not. This appears to us to be the decided result of the authorities. It must be apparent that it is not the automobile itself, but the manner of its operation that constitutes whatever danger may be caused by its presence on the road. That is to say, it is the human factor of the driver that makes injury to others possible. If a driver is reputed to be skilful and competent and is licensed by public authority to drive a car, we can see no reason why the owner of an automobile should not be permitted to assume that he breaches no duty to society at large by permitting his car to be taken out and operated by such a driver. The fact that the driver is a member of the owner's family cannot in any sensible view of the matter add an element of danger to an otherwise non-dangerous instrument. If the owner has every reason to believe that his duly licensed son or other member of the family is competent to drive his car with care and caution, he ought to be free from liability for the negligent operation of the car by his permittee, unless a basis of agency is found to exist, a basis which in the instant case we have already indicated we cannot find.

There is language in the opinion of the court in *King v. Smythe,* 140 *Tenn.* 217, *supra,* which we pause to notice before concluding this opinion. We refer to the language appearing in the quoted extract to the effect that the dictates of natural justice require that the owner of an automobile should be held liable for the damage done through its negligent operation by a member of his family, be-

cause a judgment for damages against an infant son or a daughter would, generally speaking, be an empty form. Why the dictates of natural justice require this is far from clear to us. Indeed, if the owner has been guilty of no negligence in permitting a given person to drive his car, that is to say if he has no reason to believe that the permittee is either reckless or incompetent, it occurs to us that he has been guilty of no wrong in lending his car and is chargeable with no blame and that therefore every consideration of natural justice ought in fact to require that he be not mulcted in damages in case of accident. This would appear to be clearly true unless the owner of property is to be regarded as giving an absolute assurance to the world that he will permit no one to use it unless such user is a person incapable of negligent conduct, and that if his property is so negligently handled by another as to cause injury he, as the owner, will make compensation in damages. Certainly such is not the law with respect to property generally and we can see no reasons founded in justice which would suggest that it be declared to be the law with respect to automobiles. If it were the law, it would be more severe in its operation than was the old but long since discarded law of deodands, for, while under the ancient rule applicable to deodands the offending thing alone was forfeited, under the modern law of automobiles not alone the value of the offending thing but much more might be taken from the owner as compensation for damages. With great deference to the Supreme Court of Tennessee which announced the views here being criticised and to the courts which have accepted them, we are constrained to say that we cannot accede to them.

Nor are we any more favorably inclined to subscribe to the suggested inferences contained in the following sentence found in *King v. Smythe*: "If owners of automobiles are made to understand that they will be held liable for injury to person and property occasioned by their negligent operation by infants or others *who are financially irresponsible,* they will doubtless exercise a greater degree of care in selecting those who are permitted to go upon the public streets with such dangerous instrumentalities."

Such a severe rule of vicarious responsibility as is thus indicated would undoubtedly prompt owners of cars to exercise great care in permitting others to use them, if it did not in fact serve to restrain entirely the practice. Assuming that a most extraordinary degree of care were exercised by a car owner in selecting those whom he would permit to use the car, the fact remains that in spite of it all the permittee might be such a person as would be guilty of negligence. Yet in such a case, this harsh and severe doctrine would still be unappeased by the owner's exercise of extraordinary care, and would be content with nothing short of his responding in full for the damage. In other words, because he was the owner of the car, not because he was careless in allowing another to use it, the law would hold him responsible. This would be giving to automobiles a nature and character of inherent danger similar to that of wild, ferocious animals turned loose upon the streets, which the courts in overwhelming numbers have refused to recognize.

Finally, speaking further with respect to the last quoted excerpt from *King v. Smythe,* we are wholly unable to accept the inference contained therein that the law ought, in case the driver is financially irresponsible, to look to the owner to pay the bill. As a matter of "practical" justice this method of securing compensation for the plaintiff would be a first-rate one, provided the owner were also not as financially irresponsible as the driver, a condition which is by no means unusual. But how, from the viewpoint of the owner, practical justice is administered by making him pay for the wrong done by some one else, it is very difficult for us to see, when in fact, assuming the absence of an agency, he has done nothing whatever for which under heretofore well-settled principles of law he can be held culpable and when he has in no wise been negligent in failing to forecast the occurrence of possible injury to a stranger. Practical justice to be sure requires that persons suffering injury from the tortious conduct of others should be compensated. But the practical justice of payment to the injured ought never to be secured at the expense of practical injustice to another who under long accepted principles of law is under no obligation to pay. It is not a feature peculiar to tort claimants in automobile cases that

sometimes the defendant is judgment proof. If practical justice requires the law to look around and find financially responsible defendants to pay the bill for automobile injuries, in disregard of hitherto well-accepted principles, legal ingenuity ought to direct itself to discovering some theory on which to administer practical justice generally in favor of other classes of plaintiffs who, unless some solvent debtor is found, will find their judgments unpaid. It is, of course, unfortunate that plaintiffs in tort actions of the instant kind oftentimes are unable to obtain satisfaction in damages. That circumstance, however, is insufficient in our judgment to be allowed any weight in defining the rule by which the liability of a defendant should be tested.

The judgment below will be affirmed.