## GRIFFIN *v.* RUSSELL.

1. A petition alleged, in brief, as follows: A woman owned an automobile, and had a minor son. She allowed her son to run and operate the car. On a day named the minor son was the chauffeur in charge of the car, operating it for his mother, the owner, and running it on the public road with the knowledge and consent of his mother. The boy, "who was the agent of the said [owner] as hereinbefore alleged, driving said car" negligently caused it to collide with a buggy in which the plaintiff was riding, causing injury to him and to the buggy and harness. The injury was caused by the carelessness and negligence and by acts and omissions to act on the part of the mother and on the part of the son, "her agent and chauffeur in charge of said car." By amendment the plaintiff added the following: "Defendant kept said automobile for the comfort and pleasure of her family, including Jim Russell [the son], a member of said family. He was driving said automobile at the time of the injury herein complained of, and was driving same for the comfort and pleasure of himself and friends, who were riding with him, by and with the consent of the owner of said car, the defendant." *Held,* that such petition was not subject to general demurrer.

2. The grounds of special demurrer should not have been sustained, except as to one paragraph, which alleged that the plaintiff's expenses for physician and surgeon and medicine were "$————."

(*a*) The judgment dismissing the entire petition is reversed, with direc-

tion to strike the paragraph last above mentioned, unless properly amended.

NOVEMBER 12, 1915.

Action for damages. Before Judge George. Crisp superior court.   October 31, 1914.

G. E. Griffin filed a suit against Mrs. A. E. Russell, to recover damages, alleging, among other things, as follows:   The defendant is the owner of an automobile, which she allows her minor son to run and operate.   On a day named the defendant's son was the chauffeur in charge of the car, operating it for the defendant, the owner thereof, and running it on the public road with the knowledge and consent of the owner.   While the plaintiff was traveling in his buggy along the public road, the defendant's minor son, who was her agent, driving the car, negligently caused it to run against the buggy, injuring the plaintiff, the buggy, and the harness.   The damage done to the buggy was $75, and that done to the harness was $15.   The plaintiff's expenses for physician and surgeon and medicine were $——.   He has been permanently injured, and lays his damages at $2500.   The defendant was negligent in the following respects:   In allowing her minor son to operate the car on the public road; in allowing him to operate and run the car at a high and-dangerous rate of speed; in allowing him, her agent and chauffeur in charge of the car, to operate it on a public highway at such a rate of speed as was obviously dangerous to the plaintiff and other travelers on the public road; in allowing him, while operating the car by and with her consent, to run it at such a rate of speed and in such a manner as was obviously dangerous to the plaintiff and other travelers, and in utter disregard of their rights; in allowing him, her agent and chauffeur in charge of and operating the car by and with her consent, wilfully and wantonly, in utter disregard of the plaintiff's rights, to run the car against the plaintiff's buggy at such a rate of speed as was obviously dangerous.

The defendant demurred generally and specially to the petition. A number of the grounds of the demurrer merely alleged that each of certain paragraphs in the petition, specifying them by number, did not set out a cause of action.   Certain paragraphs were demurred to on the ground that it was not stated what were the duties of the plaintiff's minor son as her agent, or what duties he was performing for her at the time of the alleged negligent injury.

The paragraph containing the allegation as to the expenses for physician and surgeon and medicine in the sum of $———— was demurred to because it did not allege the amount paid as doctor's bills and to whom paid; and the paragraph alleging the damage to the buggy and harness was demurred to because it did not specify or itemize the damage alleged to have been done to them.  The plaintiff amended his petition by adding two paragraphs.  The first was as follows: "Defendant kept said automobile for the comfort and pleasure of her family, including Jim Russell, a member of said family.  He was driving said automobile at the time of the injury herein complained of, and was driving the same for the comfort of himself and friends, who were riding with him, by and with the consent of the owner of said car, the defendant."  The second was as follows:  "The defendant kept said automobile for the purpose of hire, and the said Jim Russell, who was in charge of said car, at the time of the injury herein complained of, was acting as chauffeur and driver of said car, and did act as chauffeur and driver of said car by and with the consent and knowledge of defendant herein when said car was hired for the purpose of carrying passengers, and said Jim Russell was at all times in charge of said car by and with the consent of said defendant."  Another allegation in the proposed amendment was not allowed.

The presiding judge sustained the demurrer, passing the following order: "The within demurrer having been submitted to the court for determination, and the plaintiff having disclaimed any purpose of alleging specific knowledge and consent by the defendant of the injury complained of, the demurrer is sustained upon each and every ground thereof, and the petition stricken." The plaintiff excepted.

*J. T. Hill*, for plaintiff.    *F. G. Boatright*, for defendant.

LUMPKIN, J.  (After stating the foregoing facts.)

1.  In passing upon a demurrer to a petition, the petition and demurrer are to be considered, not oral admissions.  *Hicks* v. *Beacham*, 131 *Ga.* 89 (62 S. E. 45).

It may be taken as settled law in this State that a father is not liable for the tort of a minor child, with which he was in no way connected, which he did not ratify, and from which he did not derive any benefit, merely because of the relation of parent and

child. · *Chastain* v. *Johns*, 120 *Ga.* 977 (48 S. E. 343, 66 L. R. A. 958). And this accords with the rulings of other courts on the subject. A child, however, may occupy the position of a servant or agent of his parent, and for his acts as such the parent may be liable under the general principles governing the relation of master and servant, or principal and agent. The contested question in cases like the one under consideration usually is whether or not the facts show such a relation and liability arising to the parent therefrom. Some conflict in decisions has arisen from a difference in construing or applying the commonly used expression that the master is liable for the negligence of his servant "acting in the scope of his employment" and in regard to "his master's business," or like expressions. Courts have not always agreed as to what is within "the scope of his employment," or what was an act in regard to the master's "business;" indeed, what was comprehended in the term "business." An agent or servant is frequently employed by contract or express agreement; but this is not necessary to establish the relation. It may arise by implication as well as expressly. Thus it is declared in the Civil Code (1910), § 3569, that "The relation of principal and agent arises wherever one person, expressly or by implication, authorizes another to act for him, or subsequently ratifies the acts of another in his behalf." The formality required in creating an agency to do certain acts is not involved. The word "business" is commonly employed in connection with an occupation for livelihood or profit, but it is not limited to such pursuits. When Jesus said, "Wist ye not that I must be about my Father's business?", He had no reference to matters involving pecuniary rewards.

In Lashbrook *v.* Patten, 1 Duv. (Ky.) 316, a minor son, while driving his two sisters to a picnic in his father's carriage, drawn by his father's horses, and with his father's approbation, all of the children being members of his father's family, through negligence ran against the carriage of another, causing damage. The Court of Appeals said: "The son must be regarded as in the father's employment, discharging a duty usually performed by a slave, and therefore must, for the purposes of this suit, be regarded as his father's servant. The doctrine that masters are responsible for the injuries arising from the carelessness of their servants whilst in the master's employment and the discharge of their duties, has

been so long recognized and acted on, that we scarcely deem it necessary to elaborate the reasons or recite authorities."

In Daily v. Maxwell, 152 Mo. App. 415 (133 S. W. 351), it was held that where a father purchased an automobile for the use of his family for pleasure, and allowed his minor son to operate it for the family, he was liable for the negligence of such son while operating it for his own pleasure with the permission of the father. On that occasion the boy had asked and obtained consent of his father to take some of his young friends to ride in the automobile. In the opinion Johnson, J., said: "The evidence discloses that the machine was devoted to the use of the family of which Ernest was a member. It was a pleasure vehicle, and, when used for the pleasure of one of the minor children of the owner, how can it be said that it was not being used on business of the owner? It is the practice of parents to provide their children healthful and innocent amusements and recreations, and certainly it is as much the business of parentage to supervise and control the pleasures of their children as it is to give them nurture and education. Had Ernest been taking his mother for a pleasure ride instead of taking some of his young friends, no one would contend that he was not on his father's business; or, had he been using the car on an errand of his own, such as shopping for himself, or going to school, he would have been on his father's business, since it was the duty of his father to support and educate him. The rule that a father is not liable for the torts of his minor child applies only to cases where the tort is committed without the consent of the parent and without the scope of any duty he owes his child. We conclude that, in running the car with the consent of his father and within the scope of family uses, Ernest was the agent and servant of his father."

In Stowe v. Morris, 147 Ky. 386 (144 S. W. 52, 39 L. R. A. (N. S.) 224), a motor-car was kept by a man for the comfort and pleasure of his family, including a minor son and daughter as members of it. They had the right to use it as often as and when they liked. On the occasion in question the son took the car at his own volition, and at his suggestion carried his sister and three other ladies for a ride. While he was driving the machine, he carelessly ran down and injured a boy on a bicycle. The father was held to be liable, on the ground that, the machine having been

provided for the comfort and pleasure of the family, and the son having been given the right to use it, he was to be treated as the servant of his father when operating it (though without a special permission on that occasion) for the entertainment of his sister and her friends. In the opinion Winn, J., cited the cases of Lashbrook *v.* Patten and Daily *v.* Maxwell, supra, and said: "So, in the case at bar, the father had provided his family with this car as a means of recreation and amusement; and the son, in the use of the car for that purpose, was not performing an independent service of his own, but was carrying out what, within the spirit of the matter, was the business of the father."

In McNeal *v.* McKain, 33 Okla. 449 (126 Pac. 742, 41 L. R. A. (N. S.) 775), a father bought an automobile for the pleasure and comfort of himself and family, his minor son, who was a member of his family, being authorized to use it at any time for that purpose. It was held that the son, in taking it out for the pleasure of himself and sister, with a friend, who was a guest of the father's family, was a servant or agent of the father within the meaning of the rule as to liability of a principal for the torts of an agent or servant, and was not performing a service independent of his father, and that the latter was liable for his negligence in driving the machine. In the opinion Williams, J., said: "Vehicles and motor cars may be used not only for the business of the master for profit, but also in his business for pleasure. If Paul, the minor son of the plaintiff in error, had been driving his father's carriage (whilst he was a member of his family), in which were contained his sister and a guest of his father's house, the same being done by him with the express or implied consent of his father, the relation of master and servant would exist, and the father would be liable for the negligent acts of the minor son whilst engaged in the driving of the carriage; and the same rule is supported by authority as to motor-cars."

In Birch *v.* Abercrombie, 74 Wash. 486 (133 Pac. 1020, 50 L. R. A. (N. S.) 59), a man and wife owned an automobile, which was purchased and kept for the use of the family, and it was customary for the members of the family to drive it at their pleasure. On a certain day when the man and wife were absent from home, the daughter entertained a number of friends at luncheon. In taking them home in the automobile she negligently struck and

injured a woman on the highway. In a suit for damages, the jury found for the plaintiff against both the girl and her parents; and this finding was held by the Supreme Court to be authorized by the evidence. Ellis, J., said: "It seems too plain for cavil that a father, who furnishes a vehicle for the customary conveyance of the members of his family, makes their conveyance by that vehicle his affair,—that is, his business,—and any one driving the vehicle for that purpose with his consent, express or implied, whether a member of his family or another, is his agent." And again he said: "We think that both on reason and authority the daughter in the present instance should be held the agent of her parents in the use of the automobile. Any other view would set a premium upon the failure of the owner to employ a competent chauffeur to drive an automobile kept for the use of the members of his family, even if he knew that they were grossly incompetent to operate it for themselves. The adoption of a doctrine so callously technical would be little short of calamitous."

In Kayser v. Van Nest, 125 Minn. 277, 146 N. W. 1091, 51 L. R. A. (N. S.) 970, a man kept a car for the use, convenience, and pleasure of himself and the members of his family. It was usually driven by his daughter, nineteen years of age, and she was authorized to use it whenever she desired to do so. On the day of the accident she took it, and, accompanied by her younger sister, drove to the home of a relative, where they were joined by other young people. From this point the daughter permitted a cousin, then riding with them, to drive the car, and from his negligent driving injury occurred. On the question of whether the owner of the automobile was responsible for negligence on the part of his daughter, Taylor, C., said: "Whether the owner of an automobile is liable for the damages caused by it which result from the negligence of the person operating it depends upon whether the person operating it was the servant of the owner and engaged upon the business of the owner at the time the negligence occurred. If he was such servant and engaged upon such business, the owner is responsible for injuries to persons or property caused by his negligence in operating it. If he was not such servant or was not engaged upon such business, the owner is not responsible for such negligence. Sina v. Carlson, 120 Minn. 283 (139 N. W. 601); Geiss v. Twin City Taxicab Co., 120 Minn. 368 (139 N. W. 611,

45 L. R. A. (N. S.) 382); Meyers *v.* Tri-State Automobile Co., 121 Minn. 68, 140 N. W. 184, 44 L. R. A. (N. S.) 113); Ploetz *v.* Holt, 124 Minn. 169 (144 N. W. 745); McNeal *v.* McKain, 33 Okla. 449 (126 Pac. 742, 41 L. R. A. (N. S.) 775). Defendant's daughter, while operating the car by his authority and upon his business, was defendant's servant within the meaning of the rule, and he was responsible for her acts to the same extent that he would have been responsible for the acts of any other servant. Defendant might properly make it an element of his business to provide pleasures for his family; and as the car was intended for the use of the members of the family for purposes of pleasure as well as for other purposes, and the daughter had authority to take it and operate it for such purposes, it was at least a question for the jury whether, at the time of the accident, she was not the servant of defendant and engaged upon the business of defendant." See also Simmons *v.* Pennsylvania R. Co., 199 Pa. 232 (48 Atl. 1070), where it was said: "Since the scope of the servant's employment is necessarily dependent on circumstances, a hard and fast rule can not be laid down as to the scope of any particular employment; and it is ordinarily a question for the jury whether or not a particular act comes within the scope of a servant's employment." Also Moon *v.* Matthews, 227 Pa. 488 (76 Atl. 219, 29 L. R. A. (N. S.) 856, 136 Am. St. R. 902), in which the case then under consideration was distinguished from that of Lotz *v.* Hanlon, 217 Pa. 339 (66 Atl. 525, 10 L. R. A. (N. S.) 202, 118 Am. St. R. 922, 10 Ann. Cas. 731).

In Guignon *v.* Campbell, 80 Wash. 543 (141 Pac. 1031), it was held that a married woman owning an automobile as her separate property, which she permitted to be used by the different members of the family for family purposes, in the usual manner of using family conveyances, was liable for the negligence of her son (a member of the family) in driving such automobile in taking a servant to a street-car, though she was absent at the time and knew nothing of the particular use of the automobile; since, though she was not obliged to furnish the use of an automobile to the children or the family from her separate property, having voluntarily done so, it became in effect a use by her. After referring to the case of Birch *v.* Abercrombie, supra, Parker, J., said: "It is true, in the case before us, the automobile was the separate property of the

wife; but we are unable to see that the principle announced in the Abercrombie case is not equally applicable to her and her separate liability. This use of the automobile by her children was not like the use of it by a stranger to whom she might have loaned it. Of course, she was not obliged to ·furnish an automobile or its use to her children or her family from the proceeds of her separate property; but, having voluntarily done so, it became, in effect, a use by her. She permitted such use manifestly as a part of her parental duty, and made the furnishing of the automobile 'her affair, that is, her business,' paraphrasing the expression used in the Abercrombie case relative to the father in that case."

The case which seems to be generally cited by counsel for defendants in opposition to the views above expressed is that of Doran v. Thomsen, 76 N. J. L. 754 (71 Atl. 296, 19 L. R. A. (N. S.) 335, 131 Am. St. R. 677). The facts recited in the headnotes in that case were, that the father was possessed of an automobile which he kept upon his premises, and his daughter, about nineteen years of age, was accustomed to driving it, and did so whenever she so desired, asking permission to use it when the father was at home, but, when he was not at home, taking it sometimes without permission, there being no proof that the daughter was actually employed by the father to operate the machine. It was held, that, in an action against the father, where the daughter, in using the machine for her own pleasure in driving her personal friends, negligently injured a person on the highway, such proof was not sufficient to constitute the daughter a servant or agent of the father as the master. Voorhees, J., said, that it was error in the trial court to give a charge which made the defendant's liability depend upon the object for which he purchased the machine (which was for the pleasure of the family), in connection with the fact that his daughter operated it for that purpose, the jury being instructed that thereby she became his servant. In one or more cases this has been differentiated from those under consideration. In Birch v. Abercrombie, supra, it was criticized, and the court refused to follow it. Ellis, J., said: "While heartily subscribing to the view there expressed, 'that the mere fact of the relationship of parent and child would not make the child the servant of the defendant,' we think the opinion unsound in that it ignores the agency induced by the fact, independent of that relationship, that the daugh-

ter was using the machine for the very purpose for which the father owned it, kept it, and intended that it should be used. It was being used in furtherance of the very purpose of his ownership, and by one of the persons by whom he intended that purpose should be carried out. It was in every just sense being used in his business by his agent. There is no possible distinction, either in sound reason, sound morals, or sound law, between her legal relation to the parent and that of a chauffeur employed by him for the same purpose. The fact that the agency was not a business agency, nor the service a remunerative service, has no bearing upon the question of liability. McNeal *v.* McKain, 33 Okl. 449, 41 L. R. A. (N. S.) 775, 126 Pac. 742. In running his vehicle she was carrying out the general purpose for which he owned it and kept it. No other element is essential to invoke the rule respondeat superior."

Cases in which a chauffeur or a child of the owner of an automobile took it without the knowledge or consent of the owner, or against his instructions, and used it for his own purpose, entirely disconnected from the business of the owner or the purpose for which the machine was intended by him to be used, are easily differentiated from that now under consideration. Thus, in Maher *v.* Benedict, 123 App. Div. 579 (108 N. Y. Supp. 228), it appeared without contradiction that a son, twenty years of age, took his father's automobile without the knowledge or consent of the father, and was using it in connection with his own business when an injury to another occurred. It does not appear that there was any evidence that the automobile was provided or kept for use by the family of the owner for the convenience or pleasure of its members, though the expression is used that an owner who allows his son to drive the vehicle "at his pleasure," etc. So in Reynolds *v.* Buck, 127 Iowa, 601 (103 N. W. 946), it does not appear that the automobile was purchased or kept by the owner for the family use, or intended for that purpose. It was taken by the owner's son without the knowledge or consent of the father, and employed for the son's private use.

Nothing decided in *Fielder* v. *Davison*, 139 *Ga.* 509 (77 S. E. 618), conflicts with what is said above. In that case the defense was that the chauffeur of the owner of the car took it without the knowledge or consent of the owner or his wife (he being absent),

and used it for the purpose of taking a pleasure ride with a friend. In the opinion it was said: "It is unnecessary to discuss special cases; such as, where a parent buys an automobile to be used and operated by his son, whether the son becomes the parent's agent for that purpose; or whether, if an owner knowingly allows a child, an imbecile, a drunken person, or a grossly incompetent and unskilled person to take charge of his machine, which is dangerous if unskillfully operated, and to drive it out upon a crowded thoroughfare, his liability for an injury resulting is to be measured solely by the doctrine of respondeat superior, or whether, in such a case, the owner would himself be guilty of negligence." Thus the question presented in the case at bar was not then determined. Nor is the lending of an automobile by its owner to a servant on a particular occasion when the servant is not engaged in the performance of his master's business, and during a time when he is free to engage in his own pursuits, the same as providing an automobile for the owner's family, and allowing a child to drive it as chauffeur for the purpose for which it is kept by the owner.

In *Schumer* v. *Register,* 12 *Ga. App.* 743 (78 S. E. 731), one count of a petition alleged that a widow, having the exclusive control of her minor, unmarried daughter, owned an automobile, that the daughter was riding in it, having authority and command over the movements of it, and that it was driven by another named person, when it negligently collided with a passer and injured him. No relation of master and servant, or principal and agent, was alleged to exist between the driver of the car and the owner, nor does there appear to have been any allegation to show that the owner was liable for a tort of her daughter save the mere relationship of parent and child. An amendment was offered, alleging that the owner of the automobile kept it for the comfort and pleasure of her family, including her daughter, who was authorized to use it at any time for such purpose. The Court of Appeals held, that the count of the petition as it originally stood was insufficient; that if the daughter had been driving the automobile at the time of the collision, under certain decisions of courts in other States the mother might have been held liable; but that, under the statute of this State and the construction which the Supreme Court had put upon it, they did not think that if the amendment had been allowed the count of the petition being discussed would have shown

a cause of action against the mother. The decisions of this court which were cited by the Court of Appeals as having the effect mentioned were those in *Chastain* v. *Johns,* 120 *Ga.* 977, supra; *Lockett* v. *Pittman,* 72 *Ga.* 817; *Vaughan* v. *McDaniel,* 73 *Ga.* 97. The case of *Chastain* v. *Johns* has been referred to above; and it will be perceived that the point there decided was that a father was not liable for the tort of his minor son merely because of the relationship of parent and child. The question of whether, if a father procures and maintains an automobile to be used for the comfort and pleasure of his family, the operation of it for that purpose might not fairly be termed a part of his business, and whether, if he authorized his minor son to drive the machine for that purpose, he would be liable for the negligence of the son in so doing, was not involved. *Lockett* v. *Pittman,* supra, involved the construction of a statute which provided that, if any damage should be committed in any enclosure not protected as provided by law, by the breaking in of any animal, the owner of such animal should not be liable to answer for the trespass, and that, "if the owner of the enclosure shall kill or injure such animal in any manner, he is liable in three times the damage." Civil Code (1910), § 2025. A suit was brought against the owner of the premises for triple damages. The evidence showed that a cow was killed in the defendant's absence by his superintendent or manager, or by the order of such person. There was some discussion as to the liability of a principal for the wilful trespass of his agent or servant. But the actual ruling was, that the proceeding for triple damages was penal in its nature, that the statute should be strictly construed, and that it did not authorize a recovery, under the facts of the case. Hall, J., said: "Perhaps a recovery for the actual damages proved in this case might have been sustained, upon the evidence disclosed by the record; but beyond this we do not think the finding should have gone, unless the jury were satisfied that the alleged wrongs were done in pursuance of the defendant's commands." This presents a different question from the one under discussion. In *Vaughan* v. *McDaniel,* supra, the questions involved were as to the admissibility of evidence of certain things as part of the res gestæ of a transaction, and as to whether a suit in a justice's court for triple damages, under the statute, for the killing of a cow, could be so amended on appeal as to be converted into an action for the value of

the cow. This does not control the question now before us; and we can not concur with our brethren of the Court of Appeals in the views which they seem to have taken of the decisions cited.

In the case before us it was alleged, that the defendant was the owner of an automobile; that she kept it for the comfort and pleasure of her family, including her minor son as a member thereof; that at the time of the injury complained of he was driving the car for the comfort and pleasure of himself and friends, who were riding with him, by and with the consent of the defendant. In another part of the petition it was alleged that he was the chauffeur in charge of the car, operating it for the owner, and running it on the public road with the knowledge and consent of the owner; and that the injury was caused by the negligence of the son, who was the agent and chauffeur of the owner in charge of the car. Admitting these allegations to be true, as the demurrer does, they state a case of liability on the part of the mother. If she kept the automobile to be used for the comfort and pleasure of her family, including her minor son as a member thereof, such use was her business or affair within the meaning of the rule of law discussed above. If she had placed a third person in charge of the car as a chauffeur to drive it for the purpose for which it was kept, he would have been her agent or servant, and she would be liable for the negligent manner in which he drove the car. If, instead of doing this, she allowed her minor son to act as her chauffeur or agent for the purpose of driving the car, she would likewise be liable for his negligence in so doing. If a father or mother, owning an automobile, and keeping it to be used for the comfort and pleasure of the family, should authorize a son to drive it for the comfort or pleasure of the family, this would make the owner liable for the negligence of the son operating the machine for such purpose. How many of the family must be riding in the machine in order to make it a family use? If the boy should carry his sister for a ride, this would evidently be such use. Suppose that the sister should determine not to go, and he should go alone, would the use cease to be a family use? Certainly not all of the family have to be riding in the machine, to make it a family use. If two are sufficient for that purpose, why not one? But it may be said that here the boy was using it for the comfort and pleasure of himself and friends, who were riding with him, even though by

and with the consent of the owner of the car. If it would be a family use for the boy to ride alone, it is difficult to perceive how taking his friends with him would make it less so, especially if with the consent of the owner. Suppose that the boy should start to ride with his sister, and at the last moment she should determine not to go, and that the owner should consent for him to substitute a friend or friends of his own in lieu of his sister, would this change the whole status and relieve the owner of liability, where liability would have existed before? In this case it was alleged that on the occasion when the injury took place the boy was the chauffeur or agent of the owner, in charge of the car, operating it for the owner. It seems unquestionable that the demurrer should not have been sustained.

2. Each paragraph in a petition does not alone have to set out a complete cause of action. If it alleges facts forming a legitimate part of the cause of action, it is not subject to a ground of demurrer which merely sets up that it does not in itself set out a cause of action. A paragraph which alleged that the damage done to the plaintiff's buggy was $75, and that done to his harness was $15, was sufficient. Even the microscopic demands of a special demurrer can not require the plaintiff to specify in detail each bolt, spoke, tire, or other part of the buggy which was damaged and the exact extent and character of that damage. Nor can the plaintiff be required to state in minute detail the character of the damage to the harness, as whether a buckle was broken or bent, and how much, or whether a strap was entirely or only partially broken, or the like. There is nothing which is so insatiable in its demands for information as a special demurrer. We think, however, that this desire for information should be gratified where it asks to be told the amount paid for doctor's bills, in lieu of an allegation that the plaintiff expended for that purpose "$————."

We will not discuss the added allegations that the automobile was used for hire, and that the defendant's son acted as the chauffeur when it was so hired, as the other allegations show that it was not being used for hire when the injuries occurred. No objection was made that two theories were advanced in one count. The dismissal of the entire petition on demurrer was error. Accordingly, the judgment will be reversed, with direction that, unless amended, the paragraph in regard to the expense for physi-

cian's bill and medicine, the amount of which is stated in blank, shall be stricken.

*Judgment reversed, with direction. All the Justices concur, except Beck, J., absent.*

EVANS, P. J. I specially concur in the judgment, because of the allegation of the petition that the defendant's minor son drove the automobile as her chauffeur and with her consent on the particular occasion which resulted in the plaintiff's injury. A mother may engage her son to be a chauffeur or servant, and I construe the allegation to expressly charge that the son was acting as the servant of the mother in driving the machine. But I dissent from the proposition, which finds recognition in the opinion, that a parent who owns an automobile provided for family pleasure and driven at will by the members thereof is liable on the doctrine of respondeat superior for the negligence of a member thereon while driving the automobile filled with his own associates, and whose entertainment is in no way connected with the use for which the automobile was intended.