HUBERT *et al. v.* HARPE.

No. 10523. SEPTEMBER 28, 1935. REHEARING DENIED OCTOBER 3, 1935.

*Branch & Howard* and *Bond Almand,* for plaintiffs in error.
*J. O. Ewing* and *H. A. Allen,* contra.

BELL, Justice. The Court of Appeals (in Case No. 23642) certified the following question: "Where a father keeps and maintains an automobile to be used for the comfort and pleasure of his family, including his wife and minor children, and where he permits a non-dependent, self-supporting adult son to reside in his home without charge, whom he also as a matter of custom voluntarily permits to use and drive the automobile for the comfort and pleasure of the son upon the same footing as the father's wife and minor children, can the father be held liable for a personal injury to a third person proximately caused by the negligent operation of the automobile by such son, where at the time of the injury the son was driving the vehicle for his own recreation and pleasure by the express or implied permission of the father? See, in this connection, *Griffin* v. *Russell,* 144 *Ga.* 275 [87 S. E. 10, L. R. A. 1916F, 216, Ann. Cas. 1917D, 994]; *Stanford* v. *Smith,* 173 *Ga.* 165 [159 S. E. 666]; *Bryant* v. *Keen,*

43 *Ga. App.* 251 [158 S. E. 445]; *Kennedy* v. *Manis*, 46 *Ga. App.* 808 [169 S. E. 319]." This question is answered in the affirmative.

In *Griffin* v. *Russell*, supra, the petition alleged the following: A woman owned an automobile, and had a minor son. She allowed her son to run and operate the car. On a day named the minor son was the chauffeur in charge of the car, operating it for his mother, the owner, and running it on the public road with the knowledge and consent of his mother. The boy, "who was the agent of the said [owner] as hereinbefore alleged, driving said car," negligently caused it to collide with a buggy in which the plaintiff was riding, causing injury to him and to the buggy and harness. The injury was caused by the carelessness and negligence and by acts and omissions to act on the part of the mother and on the part of the son, "her agent and chauffeur in charge of said car." By amendment the plaintiff added the following: "Defendant kept said automobile for the comfort and pleasure of her family, including Jim Russell [the son], a member of said family. He was driving said automobile at the time of the injury herein complained of, and was driving same for the comfort and pleasure of himself and friends, who were riding with him, by and with the consent of the owner of said car, the defendant." It was held that the petition stated a cause of action. In the opinion delivered by Mr. Justice Lumpkin it was said: "It may be taken as settled law in this State that a father is not liable for the tort of a minor child, with which he was in no way connected, which he did not ratify, and from which he did not derive any benefit, merely because of the relation of parent and child. *Chastain* v. *Johns*, 120 *Ga.* 977 (48 S. E. 343, 66 L. R. A. 958). And this accords with the rulings of other courts on the subject. A child, however, may occupy the position of a servant or agent of his parent, and for his acts as such the parent may be liable under the general principles governing the relation of master and servant, or principal and agent. The contested question in cases like the one under consideration usually is whether or not the facts show such a relation and liability arising to the parent therefrom. . . An agent or servant is frequently employed by contract or express agreement; but this is not necessary to establish the relation. It may arise by implication as well as expressly. . . If [the mother] kept the automobile to be

used for the comfort and pleasure of her family, including her minor son as a member thereof, such use was her business or affair. . . If she had placed a third person in charge of the car as a chauffeur to drive it for the purpose for which it was kept, he would have been her agent or servant, and she would be liable for the negligent manner in which he drove the car. If, instead of doing this, she allowed her minor son to act as her chauffeur or agent for the purpose of driving the car, she would likewise be liable for his negligence in so doing. If a father or mother, owning an automobile, and keeping it to be used for the comfort and pleasure of the family, should authorize a son to drive it for the comfort or pleasure of the family, this would make the owner liable for the negligence of the son operating the machine for such purpose. How many of the family must be riding in the machine in order to make it a family use? If the boy should carry his sister for a ride, this would evidently be such use. Suppose that the sister should determine not to go, and he should go alone, would the use cease to be a family use? Certainly not all of the family have to be riding in the machine, to make it a family use. If two are sufficient for that purpose, why not one? But it may be said that here the boy was using it for the comfort and pleasure of himself and friends, who were riding with him, even though by and with the consent of the owner of the car. If it would be a family use for the boy to ride alone, it is difficult to perceive how taking his friends with him would make it less so, especially if with the consent of the owner. Suppose that the boy should start to ride with his sister, and at the last moment she should determine not to go, and that the owner should consent for him to substitute a friend or friends of his own in lieu of his sister, would this change the whole status and relieve the owner of liability, where liability would have existed before? In this case it was alleged that on the occasion when the injury took place the boy was the chauffeur or agent of the owner, in charge of the car, operating it for the owner. It seems unquestionable that the demurrer should not have been sustained."

As shown in other parts of that decision, the court examined numerous outside authorities, including several cases in which a contrary view had been taken. The two lines of authority were carefully considered, and a deliberate choice was made between them. The decision in that case, though not concurred in by all

the Justices, was rendered nearly twenty years ago, during which period the legislature has taken no action modifying the rule stated; and the decision has been followed by the Court of Appeals in a number of cases. Quite recently this court denied petitions for certiorari to review the decisions in *Ficklen* v. *Heichelheim, 49 Ga. App.* 777 (176 S. E. 540), and *Ficklen* v. *Watkins, 49 Ga. App.* 779 (176 S. E. 541), in each of which a mother was sued for the negligent operation of her automobile by her minor son, and in which the Court of Appeals applied the' principle enunciated in *Griffin* v. *Russell,* supra. In all the circumstances, the principle of stare decisis should be given some weight, and the more especially since the decision under the consideration is well supported by authority. Some courts have refused altogether to permit recovery in such case, while others, after first holding in favor of liability, have receded from their ·former position and announced a contrary doctrine. Cf. Hays v. Hogan, 273 Mo. 1 (200 S. W. 286, 32 A. L. R. 1490). This court adheres to its former decision. As · will have been observed, the decision was based squarely upon the relation of master and servant or principal and agent, and in the present case the principal inquiry is whether, under the facts stated, such relation existed between the defendant father and his non-dependent, self-supporting adult son, who was. driving the automobile at the time of the injury. A father is under no legal obligation to furnish an automobile for the comfort and pleasure of his child, whether minor or adult; and if he does so, it is a voluntary act on his part. In every such case the question is whether the father has expressly or impliedly made the furnishing of an automobile for such purpose a part of his business, so that one operating the vehicle for that purpose with his consent, express or implied, may be considered as his agent or servant. A child, whether minor or adult, may occupy the position of a servant or agent of his parent, and for his acts as such the parent may be liable under the general principles governing the relation of master and servant or of principal and agent. Even in jurisdictions where the doctrine of liability is recognized, it would seem that no definitely fixed rule has been applied, but that every case must stand upon its own facts as to what the parent has voluntarily assumed as a part of the business to which he will devote himself and to which he will have his vehicle applied. In support of the

views expressed above, see: Harmon *v.* Haas, 61 N. D. 772 (241 N. W. 70, 80 A. L. R. 1131); McDowell *v.* Hurner, 142 Or. 617 (20 Pac. (2d) 395, 88 A. L. R. 578); King *v.* Smythe, 140 Tenn. 217 (204 S. W. 296, L. R. A. 1918F, 293); Birch *v.* Abercrombie, 74 Wash. 486 (133 Pac. 1020, 50 L. R. A. (N. S.) 59); Watson *v.* Burley, 105 W. Va. 416 (143 S. E. 95, 64 A. L. R. 839).

In the present case the father is not relieved from liability merely because the son was an adult and was self-sustaining. It appears that the father kept and maintained an automobile for the comfort and pleasure of his family, including his wife and minor children, and that as a matter of custom he also permitted this adult son, who resided in the same home with him, to use and drive the automobile for the comfort and pleasure of the son, upon the same footing as the wife and minor children. At the time of the injury in question the son was driving the automobile, with the express or implied permission of the father, for his own recreation and pleasure, within the general purpose for which the vehicle was kept and maintained. Then, by what principle of law can the mere matter of age determine the question of liability? The extent to which the automobile might be used for the comfort and pleasure of the family was a question to be settled by the father; and it was also a matter for his own determination as to whether he would include his adult son among the number whose comfort or pleasure he would promote by the use of such vehicle. According to the reasoning in *Griffin* v. *Russell*, supra, if the father, instead of permitting the son himself to drive the car, had furnished a chauffeur to take his son for a ride for the pleasure and recreation of the son, he would be liable for the negligence of the chauffeur while conducting such business for the father as master. If the father, instead of supplying a chauffeur, expressly or impliedly permits the son to act as driver, the son would in that case become the servant, provided there is no other change in the circumstances. If the transaction is one of lending, then the father would not be liable. In Watson *v.* Burley, supra, the court, after quoting definitions of the word "family," said: "The test is not whether the child is adult or minor, but whether he was using the car for a purpose for which the parent provided it, with the permission of the parent, either

express or implied." The question whether the child is an adult is, of course, a circumstance to be considered in determining whether the relation of master and servant really exists. The decision in the Watson case quotes with approval the following from Berry on Automobiles (5th ed.), § 1357: "The question is whether the child, be he an adult or a minor, was acting for the parent, was using the car for a purpose for which the parent provided it, and the evidence to support the affirmative of this issue is not different when the child is an adult than it is when the child is a minor." In Harmon v. Haas, supra, it was said: "The fact that Katherine had reached her majority is not necessarily controlling. Paraphrasing Carpenter v. Dunnell, 61 N. D. 263 (237 N. W. 779), a daughter residing with her parents does not cease to be a member of the family merely by reason of the fact that she has reached her majority. The point is not whether the daughter is an adult or a minor, but whether she was using the car for a purpose for which the parents provided it, with authority, express or implied. Katherine was using the car with the full knowledge of the father, who had expressly granted its use to the girls for this trip to Fargo; and the father knew that Katherine was to do the driving." See also Olberg v. Kroehler, 1 Fed. (2d) 140; Gates v. Mader, 316 Ill. 313 (147 N. E. 241); Linch v. Dobson, 108 Neb. 632 (188 N. W. 227); Warren v. Norguard, 103 Wash. 284 (174 Pac. 7).

If the furnishing of an automobile for the purpose stated in the question is within what may be said to be a "business" of the owner, one to whom the car is entrusted for such purpose is not a bailee, as in a case of lending, but is a servant or agent. If, on the other hand, the car is furnished by the owner merely as an accommodation to the other, with no interest or concern in the *purpose* for which the other will use it, then its use, whether for recreation or otherwise, is not within the business of the owner, and the transaction is a mere bailment. There is a vital distinction between the two cases here supposed, and the failure to recognize it has apparently been an important factor in leading some of the courts to conclusions which, it is respectfully submitted, are unsound. In *Griffin* v. *Russell,* supra, it was said that the word "business" is commonly employed in connection with an occupation for livelihood or profit, but is not limited to such pur-

suits; and it would seem that the principles there recognized would be applicable, whether the child is a minor or an adult. Indeed, in the two lines of decisions in cases of this type, the difference between the courts depends not so much upon the minority or majority of the child as upon opposite opinions as to the soundness of what has been loosely called "the family-car doctrine." Upon the latter question the courts are hopelessly divided, the following being some of the decisions expressing the negative view: Gordon v. Rose, 54 Idaho, 502 (33 Pac. (2d) 351, 93 A. L. R. 984); Myers v. Shipley, 140 Md. 380 (116 Atl. 645, 20 A. L. R. 1460); Smith v. Callahan, 34 Del. 129 (144 Atl. 46, 64 A. L. R. 830); Van Blaricom v. Dodgson, 220 N. Y. 111 (115 N. E. 443, L. R. A. 1917F, 363); Bradley v. Schmidt, 223 Ky. 784 (4 S. W. (2d) 703, 57 A. L. R. 1100); Hays v. Hogan, supra; Stumpf v. Montgomery, 101 Okla. 257 (226 Pac. 65, 32 A. L. R. 1490); Zeidler v. Goelzer, 191 Wis. 378 (211 N. W. 140); Watkins v. Clark, 103 Kan. 629 (176 Pac. 131).

In Van Blaricom v. Dodgson, supra, the Court of Appeals of New York, speaking against the doctrine, said: "We have never heard it argued that a man who kept for family use a horse or wagon or boat or set of golf-sticks had so embarked upon the occupation and business of furnishing pleasure to the members of his family that if sometime he permitted one of them to use one of those articles for his personal enjoyment, the latter was engaged in carrying out, not his own purposes, but, as agent, the business of his father." In Smith v. Callahan, supra, the same view was presented in different language as follows: "And yet, we venture to assert, courts which apply the logic to the case of an automobile would hesitate long before applying it to the case of a baseball-bat, for instance, supplied by a father for the recreation of his boys." In Watkins v. Clark, supra, it was said: "The development of the law on this subject has been attended by a rather slow process of clarification. When the automobile was new and strange, and was regarded with some wonder and considerable fear, there was a tendency to look upon it as a dangerous thing, fraught with such possibility for harm that the owner should always be held responsible for its use. When it commenced to take the place of the family horse, this view had to be abandoned. The notion, however, of general liability on the part

of the owner for use of his car having been planted in the mind, it lingered there like a superstition. . . The sooner the courts settle down and deal on the basis of fact and actuality with a vehicle which has revolutionized the business and the pleasure of the civilized world, the better it will be, not only for society but for the courts." These comparisons are so extreme as to border on the imaginary. When both the character and the uses of the several instruments are considered, it would seem to be utterly fallacious to compare an automobile with a boat, a set of golf-sticks, or a baseball-bat. And when, forsooth, did the automobile assume the gentle character of old Dobbin or fall into the harmless tread of the primitive wagon? The passing of its novelty and the improvement of its mechanism seem to have reduced but little, if any, the danger involved in its use, in view of the increase in speed and the more congested traffic.

Replying to the argument advanced by the New York Court of Appeals in Van Blaricom v. Dodgson, 220 N. Y. 111 (115 N. E. 443, L. R. A. 1917F, 363), the Supreme Court of Tennessee, in King v. Smythe, supra, said: "It seems to us that the foregoing reasoning is more concerned with what the learned court considered pure logic than with the practical administration of the law. If a father purchases an automobile for the pleasure and entertainment of his family, and, as Dr. Smythe did, gives his adult son, who is a member of his family, permission to use it for pleasure, except when needed by the father, it would seem perfectly clear that the son is in the furtherance of this purpose of the father while driving the car for his own pleasure. It is immaterial whether this purpose of the father be called his business or not. The law of agency is not confined to business transactions. It is true that an automobile is not a dangerous instrumentality, so as to make the owner liable, as in the case of a wild animal loose on the streets; but, as a matter of practical justice to those who are injured, we can not close our eyes to the fact that an automobile possesses excessive weight, that it is capable of running at a rapid rate of speed, and, when moving rapidly upon the streets of a populous city, it is dangerous to life and limb and must be operated with care. If an instrumentality of this kind is placed in the hands of his family by a father, for the family's pleasure, comfort, and entertainment, the dictates

of natural justice should require that the owner should be responsible for its negligent operation, because only by doing so, as a general rule, can substantial justice be attained. A judgment for damages against an infant daughter or an infant son, or a son without support and without property, who is living as a member of the family, would be an empty form. The father, as owner of the automobile and as head of the family, can prescribe the conditions upon which it may be run upon the roads and streets, or he can forbid its use altogether. He must know the nature of the instrument, and the probability that its negligent operation will produce injury and damage to others. We think the practical administration of justice between the parties is more the duty of the court than the preservation of some esoteric theory concerning the law of principal and agent. If owners of automobiles are made to understand that they will be held liable for injury to person and property occasioned by their negligent operation by infants or others who are financially irresponsible, they will doubtless exercise a greater degree of care in selecting those who are permitted to go upon the public streets with such dangerous instrumentalities. An automobile can not be compared with golf-sticks and other small articles bought for the pleasure of the family. They are not used on public highways, and are not of the same nature of automobiles." To the same effect see the later decision by the same court in Schwartz *v.* Johnson, 152 Tenn. 586 (6) (280 S. W. 32). We are aware that the decision from which we have just quoted has been criticized; but the same is true of practically every other decision that has been written, either pro or con, upon the subject, including even now the present one, as in the able dissenting opinion filed herein.

In holding the owner liable in such case the courts do not invade the province of the legislature, but merely apply an established principle of the common law to new conditions, recognizing that the true law is not to be found in letter and form, but that spirit, substance, and growth must be considered. While we may not approve everything said in the preceding quotation, it clearly illustrates the life and force of the common law, and its adaptability to modern problems; and such is manifestly the real basis of that decision, without denominate terms to that effect. "It has been said so often as to have become axiomatic

that the common law is not immutable but flexible, and by its own principles adapts itself to varying conditions." Funk v. U. S., 290 U. S. 371 (54 Sup. Ct. 212, 216, 78 L. ed. 369, 93 A. L. R. 1136, 1142); 12 C. J. 178, § 5. The familiar statement that no rule of the common law can survive the reason on which it is founded is but a corollary of the greater truth that the common law springs from reason and necessity, shaping its rules to accomplish the ends of justice, in the light of usage and custom. *Curtis* v. *Ashworth,* 165 *Ga.* 782, 793 (142 S. E. 111, 54 A. L. R. 1457); Ketelson v. Stelz, 184 Ind. 702 (111 N. E. 423, L. R. A. 1918D, 303, Ann. Cas. 1918A, 965). The probability of injury from the use of the simpler instrumentalities referred to is so negligible that to apply the master-and-servant rule of liability would be strained and needlessly vexatious, although, technically, at least the germ of the relation could be discovered, provided the father himself owned and maintained the instrument and as such proprietor was interested in the *purpose* of its use. 46 C. J. 1325-1327. With the advent of the automobile and the dangers arising from its operation, there is sound reason, and no assumption of authority, in applying the common-law principle of master and servant, where the vehicle, with the consent of the owner, is being actually operated for a purpose for which it is maintained, even though such purpose is only for pleasure or recreation. In *Stanford* v. *Smith,* supra, it was held: "The father of a minor son who is a pupil attending a public school or high school, and who seriously injured a fellow pupil while working in a chemical laboratory by the direction of a teacher, by throwing sulphuric acid in the face of his fellow pupil, is not liable for damages because of this tortious act, it not appearing that the same was committed by the command or with the consent of the father, or that it was ratified by him, or that he derived any benefit therefrom." The father in that case did not own or maintain the laboratory, and was not the proprietor of the business or activity conducted therein. No other relation except that of parent and child appeared to have existed, which relation, without more, is insufficient to make the father liable. That was a unanimous decision, and the court *distinguished,* without questioning, the decision in *Griffin* v. *Russell,* supra. What has been said above accords with the rulings in *Chastain* v. *Johns,* fol-

lowed in *Stanford* v. *Smith,* supra, and with the decision in *Kennedy* v. *Manis,* supra, but would seem to be inconsistent with that in *Bryant* v. *Keen,* supra; the three last-mentioned cases being among those cited with the question propounded.

*All the Justices concur, except Atkinson and Gilbert, JJ., who dissent, and Russell, C. J., absent for providential cause.*

GILBERT, Justice, dissenting. The case of *Griffin* v. *Russell,* 144 *Ga.* 275 (supra), dealt with the question of the liability of a mother, the owner of an automobile, for the tort of her *minor* son. That case is not a binding precedent in the present case, for several reasons. In the present case the tort was committed by an adult son. Neither he nor his father was dependent upon the other. The son resided in the home of his father as a guest upon the same principle that shelter is always tendered by a father to his child of whatever age. Only four Justices consented to the principle ruled in the *Griffin* case, cited as authority in the majority opinion in the present case. One Justice was absent, and Presiding Justice Evans filed a special concurrence based upon the ground that the court was dealing merely with the sufficiency of the petition to withstand a general demurrer. Justice Evans said: "I specially concur in the judgment, because of the allegations of the petition that the defendant's minor son drove the automobile as her chauffeur and with her consent on the particular occasion which resulted in the plaintiff's injury. A mother may engage her son to be a chauffeur or servant, and I construe the allegation to expressly charge that the son was acting as the servant of the mother in driving the machine. But I dissent from the proposition, which finds recognition in the opinion, that a parent who owns an automobile provided for family use and driven at will by members thereof is liable on the doctrine of respondeat superior for the negligence of a member thereof while driving the automobile filled with his own associates, and whose entertainment is in no way connected with the use for which the automobile was intended." It should be here noted that the two cases, mentioned in the majority opinion, in which this court denied petitions for the writ of certiorari dealt with a tort by a minor, and not by an adult son. In the majority opinion, in the same connection, it is urged that the doctrine of stare decisis should have weight in the present decision. The reference is to

stare decisis on the part of the Court of Appeals' decisions. That principle should not weigh in this instance, because we are answering a question propounded by the Court of Appeals. The question would not have been submitted had that court been satisfied with their previous decisions. It should be a necessary conclusion that the Court of Appeals desired a binding decision unembarrassed by their former decisions. I think it is conceded that the liability of the father for the tort of his child is based upon the doctrine of respondeat superior, because the father is entitled to the services of his minor child. The father is not entitled to the services of his adult son. The doctrine of respondeat superior can not apply where the child is a bailee, having obtained the use of his father's automobile as a mere loan for use in the child's own business. If the adult son was not engaged in the prosecution of his father's business, the latter could not, under the law of Georgia, be held liable for a tort of his son. Compare *Greeson* v. *Bailey,* 167 *Ga.* 638 (146 S. E. 490). It is not intimated that the son used the automobile in the business of his father.

I am aware that there are authorities which lay down the proposition that when a father owns an automobile and permits the use of it to members of his family for their pleasure and convenience, such use is in law carrying on the *business* of the father; but I can not accept that theory. The keeping of an automobile by a father or the head of a family for the pleasure of his family is not carrying on a *business*. To make it the business of the father, the automobile must be used in some way for the benefit or profit of the father. To use it for the benefit and pleasure of the child, disconnected from any purpose or interest of the father, can not be a business of the father. In *Stanford* v. *Smith,* 173 *Ga.* 165 (supra), in which was involved the question whether a father, who had sent his son to school, was liable for damages caused another child by the negligence of his own child in carelessly and negligently throwing acid into or at a sink in the room where he was working under direction of the teacher, thereby throwing some of it into the face of such other pupil and injuring him, the court held, in the first headnote, that "Every person shall be liable for torts committed by his child by his command or in the prosecution and within the scope of his business,

whether the same be negligent or voluntary," but in the second headnote held that "While a child may occupy the position of a servant, or of an agent of his parent, and for his acts if he is either a quasi-servant or an agent of his parent he may be liable under the general principle stated in the foregoing headnote, still a father is not liable for a minor child's tort with which he was in no way connected, which he did not ratify, and from which he did not derive any benefit." And in the concluding part of the opinion by Chief Justice Russell it was stated: "We do not think that if a child who was attending school should commit a far more serious tort, by shooting down one of his comrades and causing his death, the father could be held liable in damages for the life thus wrongfully and feloniously taken. Yet the present case and the illustration given differ only in degree." If the adult son in the present case occupied the status of a servant to his father, then the father would be responsible for any tort committed by the son if within the scope of the employment; but, according to the question propounded, the son was not so engaged. It does not appear that the father knew how or where the automobile was to be used. The relation of principal and agent is not suggested. That relation is created only where "one person, expressly or by implication, authorizes another to act for him, or subsequently ratifies the acts of another in his behalf." Code of 1933, § 4-101. It seems plain from the question that the son borrowed the automobile from his father. The son acted for himself and on his own business. It must in frankness be conceded that the courts in other States are divided on the question here presented. The majority opinion fairly so states.

Among the cases where it has been held that the father is not liable is that of Van Blaricom v. Dodgson, 220 N. Y. 111 (115 N. E. 443, L. R. A. 1917F, 363). The headnote is as follows: "One owning an automobile for the pleasure of his family is not liable for injury negligently caused by his adult son, who is a capable driver, when, with the owner's permission, he is using the car for his own purpose, on the theory that in so doing he is really carrying out the business of the owner of furnishing such pleasure." Chief Justice Hiscock argues the question, in part, as follows: "It seems to us that such a theory [that of liability] is more illusory than substantial, and that it would be far-

fetched to hold that a father should become liable as principal every time he permitted a capable child to use for his personal convenience some article primarily kept for family use. That certainly would introduce into the family relationship a new rule of conduct which, so far as we are aware, has never been applied to other articles than an automobile. We have never heard it argued that a man who kept for family use a horse or wagon or boat or set of golf-sticks had so embarked upon the occupation and business of furnishing pleasure to the members of his family that if sometimes he permitted one of them to use one of those articles for his personal enjoyment, the latter was engaged in carrying out, not his own purposes, but, as agent, the business of his father. It seems to us that the present theory is largely due to the thought, that, because an automobile may be more dangerous when carelessly used than any of the other articles mentioned, there ought to be a larger liability upon the part of the owner, and to this end an extension of the doctrine of principal and agent in order properly to safeguard its use. Thus, in Hays *v.* Hogan, 180 Mo. App. 237, 165 S. W. 1125, it is said: 'We think that when an automobile . . is being used by another member of the family than the owner, but with the owner's consent, that he should not be heard to say that such other is not his agent or servant. No dangerous rule is thus established, but one in harmony with and conducive to the proper recognition of the legislative enactment.' ∕. . And in the present case it is in effect argued that because the use of an automobile upon a highway may be dangerous, and therefore is a privilege subject to license by the State, the courts can apply a different rule of agency to its use than would or could be applied to the case of the other articles which have been mentioned. This kind of argument, as it appears to us, discloses the novelty and weakness of the proposition which is being urged upon us. It seems to disclose the idea, as an essential part of the argument, that because an automobile is different than a horse or boat, some advanced rules ought to be applied to its use. But the rules of principal and agent are not thus to be formulated. They are believed to be constant, and not variable in response to the supposed exigencies of some particular situation. The question whether one person is the agent of another in respect to some transaction is to be determined by the

fact that he represents and is acting for him, rather than by the consideration that it will be inconvenient or unjust if he is not held to be his agent. If, contrary to ordinary rules, the owner of a car ought to be responsible for the carelessness of every one whom he permits to use it in the latter's own business; that liability ought to be sought by legislation as a condition of issuing a license, rather than by some new and anomalous slant applied by the courts to the principles of agency."

In Smith v. Callahan, 34 Del. 129 (144 Atl. 46, 64 A. L. R. 830), it was said: "But, after all, can it be said that when a father becomes an owner of an automobile and allows the members of his family to use it, they, when they are out riding for their own convenience and pleasure and often without even his knowledge, can be said to be transacting his business? . . That the pleasure, comfort, and convenience of the members of a man's household are matters of concern to him can not, of course, be denied. This concern is not alone collective in its operation. It is individual and personal, and applies as well to each of the family members as to the collective group. . . Now if one member of the family is transacting the business of the family head when he is serving his own individual purposes by using the instrumentality of an automobile supplied by a father for the family's entertainment, why should he not be similarly transacting the father's business if he used for his own entertainment or recreation any other instrumentality supplied by the father for that purpose? . . We can see no escape from this conclusion. And yet, we venture to assert, courts which apply the logic to the case of an automobile would hesitate long before applying it to the case of a baseball-bat, for instance, supplied by a father for the recreation of his boys. Imagination would run on indefinitely and suggest other instrumentalities supplied by fathers and heads of families for the use of all or a part of the members of his household, but which courts would be most reluctant to say were being employed in the father's business when being used for the purposes they were intended to serve. The word 'business' is a word of varied meaning. . . In so far as the comfort, pleasure, and convenience of a man's family are matters of concern and interest to him, it is not improper to say that it is his business to promote them. This use of the word, however, is far removed from the

legal connotations which we understand inhere in it when we speak
of the employment by one of an agent to promote or transact busi-
ness in his behalf. If A acts at B's request in the furtherance of
B's business, A is an agent for whose acts B is responsible. That
is a proposition which generally speaking is sound. Simply be-
cause the interest and concern of a father in his children's recrea-
tion and amusement may in one sense of the word be spoken of
as a matter of his business, it does not follow that it is business
in every sense of the word, so that all the legal incidents attach-
ing to the idea in its latter meanings must attach to it in its
former meaning. A syllogism which deduced its conclusion from
a major premise containing the word 'business' in one of its
meanings and a minor premise containing the same word in another
of its meanings, would present the fallacy known to the logicians as
that of the ambiguous middle. If, in such cases as we are deal-
ing with, the son is the agent of the father in the transaction of
the father's business, we have what appears to us to be an anom-
alous type of agency. Ordinarily an agent is engaged in doing
something for the principal's benefit and in the principal's stead.
Yet, here in this case, the so-called agent was acting solely for his
own benefit and completely without the knowledge of his supposed
principal. This we say appears to us to be an anomalous sort of
agency. It is one where the principal's business is to permit his
agent to do something for himself."

In Watkins v. Clark, 103 Kan. 629 (176 Pac. 131), it was said:
"The purchase of an automobile by the defendant for the use of
his family, including the daughter, operated as a gift to them of
the right to use it. When using it to accomplish his purpose,
whether business or pleasure, they represent him, but when they
exercise their privilege and use it to accomplish their own dis-
tinct purposes, whether business or pleasure, they act for them-
selves, and are alone responsible for their negligent conduct. The
fact that the automobile was purchased for use by the owner's
family did not make him generally responsible for the subsequent
operation, and because the car was subject to appropriation by the
members of his family for their own use, there is no presumption
that any particular trip was made in his behalf. The use made
of the car on any particular occasion is a question of fact, to be
determined by evidence showing the fact, and in this instance

there was no evidence that anybody was concerned except the daughter. The development of the law on this subject has been attended by a rather slow process of clarification. When the automobile was new and strange, and was regarded with some wonder and considerable fear, there was a tendency to look upon it as a dangerous thing, fraught with such possibility for harm that the owner should always be held responsible for its use. When it commenced to take the place of the family horse, this view had to be abandoned. The notion, however, of general liability on the part of the owner for use of his car having been planted in the mind, it lingered there like a superstition. Courts were reluctant to ignore it, and as a result an adaptation of the law of master and servant, and principal and agent, was resorted to, to explain the liability. . . As this incongruity became more and more apparent, a further concession was sometimes made. If the owner allowed a member of his family to use the automobile, he might not be liable, but it was 'presumed' the use was by his representation. . . The sooner the courts settle down and deal on the basis of fact and actuality with a vehicle which has revolutionized the business and the pleasure of the civilized world, the better it will be, not only for society but for the courts." As was said in Zeidler v. Goelzer, 191 Wis. 378 (211 S. W. 140), after approving the view of the case quoted from above, "The doctrine of liability based on respondeat superior has become so firmly entrenched in the common law that if it is to be modified in any respect, as is said in the former opinion in this case, it should devolve upon the legislature."

In King v. Smythe, 140 Tenn. 217 (204 S.. W. 296, L. R. A. 1918F, 293), the family-purpose doctrine was applied, and the reasoning in Van Blaricom v. Dodgson, supra, was criticized as being more concerned with what the court considered as pure logic than with the practical administration of the law; and it was stated that "If owners of automobiles are made to understand that they will be held liable for injury to person and property occasioned by their negligent operation by infants or others who are financially irresponsible, they will doubtless exercise a greater degree of care in selecting those who are permitted to go upon the public streets with such dangerous instrumentalities. An automobile can not be compared with golf sticks and other small

articles bought for the pleasure of the-family. They are not used on public highways, and are not of the same nature of automobiles." In noting this case, the court said, in Olberg v. Kroehler, 1 Fed. (2) 140, 142: "We think the Tennessee court in this case embraced the 'family purpose' doctrine to its full extent, and took a position in advance of that accepted by some other courts, as we shall presently see."

As heretofore mentioned in this dissent, differences in the views of the various jurisdictions might be illustrated at great length, and it would serve no useful purpose to offset one against the other. What I do wish to emphasize, however, is that the doctrine of respondeat superior is not be be measured by the relatively dangerous nature of different instrumentalities, but must be applied and given effect as it is under the common law until a change is made in the law by legislative enactment. It is not to be strained by judicial construction merely because an automobile, if negligently used, is more capable of causing damage than some other instrumentality. Moreover, "An automobile is not classified with dangerous instrumentalities, such as dynamite, gunpowder, ferocious animals, and the like, so as to 'make the owner liable for injury occurring from the running of the automobile, on the same basis that an owner of such an instrumentality would be liable for an injury occasioned by it." *Fielder* v. *Davison,* 139 *Ga.* 509 (77 S. E. 618). It is not, in my opinion, within the province of this court, under the doctrine of respondeat superior, to hold an owner liable under the circumstances of the present case, even though it be thought *desirable* to hold him responsible on the theory that it is inherently more dangerous than a "boat" or a "golf stick." Before liability can attach, it must be held that the son was the servant or the agent of the father in the enterprise. Even in Tennessee, where the "family-purpose" doctrine was applied, as is shown in the majority opinion of this court, it was held in Raines v. Mercer, 165 Tenn. 415 (55 S. W. 2d, 263), that "The doctrine of respondeat superior rests upon the doctrine that the wrong of the agent is the act of the employer." It was further stated that "The conclusion in King v. Smythe, 140 Tenn. 217 (204 S. W. 296, L. R. A. 1918F, 293), which adopted the family-purpose doctrine, rested upon the doctrine of *agency.*" (Italics mine.) I can not agree that the son

in the present case was either the agent of the father or on the business of the father. The cases from which I have quoted call attention to the fact that the father has not been held liable in the use of such commonplace articles as golf-sticks, etc. There is a danger that the liability in the case of an automobile might be unwisely extended to the use of admittedly less dangerous articles. It is, to my mind, no answer to point out that it is unreasonable to classify them together. I suppose that the argument seeks to offer a security, which I fear can not be counted upon, that no court will go so far as to apply the doctrine to the use of a golf-stick or a boat, etc. Gradual encroachments upon many sound principles have sometimes been observed; and the danger or tendency, once detected, should be suppressed. The purpose of the quoted decisions was not to impute to golf-sticks or the like, an inherent danger equal to that of an automobile, but to point out that the "family-purpose" doctrine has not been applied to the use of them, although, so far as "family purpose" is involved, the use might be said to be the same as in the case of an automobile. Logically, therefore, in the administration of the law no distinction can be made except on some unauthorized basis that the owner, in the case of an automobile, *ought to be held liable* because of the inherently more dangerous nature of the automobile. The doctrine of respondeat superior can not be sauce for the goose and gall for the gander. Under the majority ruling and reasoning employed in the present case there is no limit within which the rule may not be extended. In another case decided at this time (*Levy* v. *Rubin,* post, 187) the principle is extended still further. That decision holds a bachelor brother liable for a tort committed by a sister while using his automobile. If these decisions are established as the law of Georgia, owners should, before lending an automobile to their children, a relative, or any one for his own pleasure, execute a special contract limiting the use of the car to the business of the borrower, thus specifically fixing the relationship of the parties. It would be a strange father who would deny the use of his automobile to his child, whether minor or adult, who is deemed competent to drive it and is within the age limit of a person allowed by law to drive it; and under the circumstances comprehended in the certified question I can not agree that he would be liable.

I am authorized to state that Justice Atkinson concurs in the foregoing dissent.