Danielle M. LANG and John Doe,
Defendant Below, Appellant,

v.

Raymond MORANT, Alicia Morant, his
wife, Plaintiffs Below, Appellee.

No. 545,2003.

Supreme Court of Delaware.

Submitted: Dec. 15, 2004.
Decided: Jan. 13, 2005.

Louis B. Ferrara (argued) of Ferrara, Haley, Bevis & Solomon, Wilmington, Delaware for appellant.

John E. Sullivan (argued), Wilmington, Delaware for appellee.

Before STEELE, Chief Justice, HOLLAND, and JACOBS, Justices.

STEELE, Chief Justice.

In this automobile personal-injury action, Danielle Lang, a defendant below, appeals from an order of a Superior Court judge that set aside an initial jury verdict in her favor and granted a new trial. The second trial resulted in a jury award of $25,000 to Appellee Raymond Morant. Lang appeals that result as well. The trial judge, in the initial trial, specifically asked the jury to determine as a matter of fact whether the person driving Lang's car had acted as Lang's agent at the time of the accident. Despite submitting the issue of agency to the jury in the first trial, the trial judge then decided to set aside the initial jury verdict and order a new trial on two alternative grounds. First, the trial judge found that Lang so controlled the driver's actions that the negligent driver became her agent as a matter of law. Second, the trial judge found *sua sponte* that several remarks by Lang's counsel in summation had substantially prejudiced Morant's case.

We conclude that the trial judge correctly submitted the issue of agency to the jury in the first trial and that the evidence did not preponderate so heavily against the jury's finding that no reasonable jury could find that Lang's driver was not acting as her agent at the time of the accident. We must therefore conclude that the trial judge abused her discretion by setting aside the jury's verdict in the first trial. Moreover, because defense counsel's comments, although improper, focused exclusively on matters apart from the jury's agency-related findings, we also conclude that the trial judge erred when she overturned the jury's verdict on that basis *sua sponte*. Accordingly, we vacate the judgment of the Superior Court ordering a new trial, all subsequent rulings, and the second jury verdict. We remand with instructions to reinstate the original jury verdict and to enter judgment in favor of Lang.

I.

In April 1997, Morant drove a car that collided with the car owned by Lang and driven by someone she knew only as "Lewis." Shortly before the accident, Lang, Lewis, and a mutual friend rode to a local fast-food restaurant in New Castle County.

After picking up another passenger, they left the restaurant. Once on the highway, Lewis drove Lang's car into the rear of Morant's. After a brief conversation with Lewis and Lang, Morant left the scene to call the police. By the time Morant returned, Lewis and the other passengers had fled. Lang remained, but could not provide Lewis's full name to the investigating officer.

After unsuccessful attempts to identify the driver, Morant filed suit in Superior Court against Lang and the pseudonymous Lewis, alleging that Lang had negligently entrusted her vehicle to Lewis. Lang then moved for summary judgment. Recognizing that his complaint might not survive solely on a negligent entrustment claim, Morant moved shortly thereafter to amend to add an agency theory of liability. The trial judge denied *both* motions, citing no reason other than her concern that Lewis remained unidentified and that dismissing Lang would leave Morant without a remedy.[1]

Although she had earlier denied Morant's motion to amend, to allege an agency theory of liability, at the trial the trial judge concluded that the evidence presented at trial was consistent with an agency relationship and that to conform to that evidence the jury must be instructed on an agency theory. The jury then specifically found no agency relationship and returned a verdict for Lang. Later, Morant moved for a new trial, contending that the jury deliberated without fully understanding the principles of agency. In support of his

motion, Morant pointed to a jury question on agency sent to the trial judge during deliberations.

In an August 2001 post-trial order, the trial judge discussed for the first time her reasoning for allowing Morant to argue an agency theory and for giving the corresponding jury instruction:

At trial, the agency-related evidence was presented, inevitably, in the context of the facts of the case and the earlier ruling I made [prohibiting amendment], but the missing driver still had not been located in spite of [Lang's] considerable efforts. I permitted the agency issue to go to the jury under Superior Court Civil Rule 15(b), as an amendment to conform to the evidence. It became clear to me during the trial that agency was the critical issue in determining liability. The only testimony presented on the subject at trial was from defendant Lang.[2]

Noting that Lang's ownership and control of the vehicle and its occupants was undisputed, the trial judge apparently reconsidered her earlier rulings and held, contrary to the jury's findings, that the evidence established an agency relationship as a matter of law. She then granted Morant a new trial.[3] Still concerned that Lang was "entitled to an opportunity to find the missing driver," however, the trial judge declined to direct a verdict in Morant's favor.[4]

Secondarily, the trial judge *sua sponte* criticized several comments defense counsel made in his summation to the jury.[5] Because of counsel's "multiple direct com-

---

1. *Morant v. Lang*, Del.Super., C.A. No. 99C–03–162 (Jan. 5, 2001) (Letter Op.). The trial judge denied Morant's motion to amend at an earlier hearing. *See* Tr. of Civ. Mot., C.A. No. 99C–03–162 (Dec. 19, 2000), at 15, 19–20.

2. *Morant v. Lang*, Del.Super., C.A. No. 99C–03–162, 2001 WL 1456790 (Aug. 13, 2001) (ORDER), at 3–4.

3. *Id.* at 4.

4. *Id.* at 5.

5. *See id.* at 5–6 (quoting trial transcript: "[T]hey are going to tell him to jog two miles? I suggest it is not very credible. That is what he says under oath looking you guys right in the eye.... They go to Fitzgerald, that's got to

ments about the credibility of both [Morant] and his expert physician," subjects that were "central to the claim of damages," the trial judge found in retrospect that the curative instruction she had given, designed to remedy any prejudice to Morant, had not accomplished that goal.[6] The improper closing remarks were, therefore, an alternative basis for granting a new trial.

By early 2003, neither party had been able to identify Lewis. In anticipation of a second trial, and in light of the trial judge's most recent determination that the first-trial's evidence established an agency relationship as a matter of law, Morant sought summary judgment. Based upon her August 2001 order, in which she found agency to have been established as a matter of law, the trial judge granted summary judgment on liability. Trial on damages alone began in October 2003. The jury awarded Morant $25,000. Lang now appeals the Superior Court's August 2001 decision granting a new trial, as well as several other rulings that, given our disposition of this appeal, we need not address.

## II.

### A. The Reasonableness Of The Jury Verdict

■ Historically, the trial judge's inherent power to grant a new trial has been tempered by the deference given to a jury's findings.[7] A new trial is warranted only if the jury's verdict is "clearly the result of passion, prejudice, partiality, or corruption,"[8] or the evidence "preponderates so heavily against the jury verdict that a reasonable jury could not have reached the result."[9] We review the grant or denial of a new trial for abuse of discretion.[10]

Lang argues that it was reasonable for the jury to find that the short trip to the restaurant did not give rise to the level of control required for a finding of agency. In support of her contention, Lang points to the jury's clarification request during deliberations. In response, Morant focuses on Lang's ownership-and-control testimony and argues that the trial judge's conclusion that no reasonable juror could have so found is supported by the record.

■ A party injured by the driver of another's vehicle may recover from the owner under a theory of vicarious liability.[11] Thus, an owner is liable for the negligent operation of the vehicle "by his agent or servant who at the time of the accident was engaged in the master's business or pleasure with the master's knowledge and direction."[12] No principal-agent relationship exists, however, where an

---

be the most bogus explanation of why someone saw a doctor you are ever going to hear in your life.... How can you believe anything he says to you when he tells you that[?]'").

6. *Id.* at 6–7.

7. *Amalfitano v. Baker,* 794 A.2d 575, 577 (Del. 2001); DEL. CONST. art. IV, § 11(1)(a) ("[O]n appeal from a verdict of a jury, the findings of the jury, if supported by the evidence, shall be conclusive.").

8. *Walker v. Campanelli,* 2004 WL 397043, 2004 Del. LEXIS 462 (Del.2004), *citing Young v. Frase,* 702 A.2d 1234, 1236 (Del.1997).

9. *Storey v. Camper,* 401 A.2d 458, 465 (Del. 1979).

10. *See, e.g., Dunn v. Riley,* 864 A.2d 905, 906 (2004).

11. *Finkbiner v. Mullins,* 532 A.2d 609, 615 (Del.Super.Ct.1987) (contrasting automobile-related theories of negligent entrustment and vicarious liability).

12. *Cox v. Dean,* 1994 WL 466312, at \*2, 1994 Del.Super. LEXIS 357, at \*8; *cf. Fisher v. Novak,* 1990 WL 82153, at \*2, 1990 Del.Super. LEXIS 205, at \*5 ("It is long established that, in general, the owner of an automobile is

owner "merely permits [the other] to use the vehicle for the latter's own purposes."[13] The requisite indicia of agency in the automobile-negligence context are ownership and control.[14] Although a legal concept, agency depends on the presence of factual elements.[15] It is thus a question usually reserved to the factfinder.[16]

In the August 2001 order, the trial judge emphasized Lang's testimony in finding an agency relationship as a matter of law. She noted the "common purpose" that the owner and operator shared in traveling to the restaurant, Lang's presence in the front seat, and her consent to ("Lewis") picking up another passenger. From this record, the trial judge concluded that, as a matter of law, Lang exercised the requisite control to establish a principal-agent relationship.

While this conclusion may be reasonable, it is not preordained. Agents necessarily subsume their interests to those of the principal. Under more common agency applications—the relationship between, for example, an employer and employee or a parent and subsidiary corporation—the line between self interest and the principal's "business or pleasure," while often factually subtle, is conceptually straightforward. But outside the commercial or employment context, as in the case of a routine social outing, the factfinder is confronted with having to sift strictly personal and informal interests of the two persons involved. The weight given to these factors, is fundamentally a question for the trier of fact.

▆ In situations where an owner of a vehicle allows another to drive, it is not indisputably clear that the owner's presence as a passenger in the vehicle at the time of the accident dictates a finding of agency as a matter of law. We conclude that in the circumstances of this case, even given Lang's uncontroverted testimony, a jury could reasonably find that Lang's "control" over Lewis fell short of an uncontestable conclusion that an agency relationship existed. Where the evidence is susceptible to two equally reasonable con-

not liable for injuries negligently caused by its operation by one whom the owner has permitted to use the vehicle, absent some agency relationship between the owner and the operator."), citing *Smith v. Callahan*, 144 A. 46 (Del.1928).

13. *Cox*, 1994 WL 466312, at *2, 1994 Del.Super. LEXIS 357, at *8; cf. *Smith*, 144 A. at 50 ("Ordinarily an agent is engaged in doing something for the principal's benefit and in the principal's stead.").

14. *Finkbiner*, 532 A.2d at 615; see also RESTATEMENT (SECOND) OF AGENCY § 1(1) (1958) [hereinafter RESTATEMENT] ("Agency is the fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act.").

15. RESTATEMENT § 1 cmt. (1)(b).

16. See *Knerr v. Gilpin, Van Trump & Montgomery, Inc.*, 1988 WL 40009, at *2, 1988 Del.Super. LEXIS 138, at *6 ("[W]hether an agency or other type of relationship exists is an intensely factual one."); *J.E. Rhoads & Sons, Inc. v. Ammeraal, Inc.*, 1988 WL 32012, at *21, 1988 Del.Super. LEXIS 116, at *58 ("[T]here is a question of fact as to whether Ammeraal was the agent of Belting."); *Giangrant v. Richard A. Parsons Agency, Inc.*, 1988 WL 40023, 1988 Del.Super. LEXIS 128 (summary judgment denied because question of fact existed concerning agency relationship). Cf. *Fisher v. Townsends, Inc.*, 695 A.2d 53, 59 (Del.1997) (noting the "determination [of servant versus independent contractor] is ordinarily made by the factfinder...."); *Fulton v. Quinn*, 1993 WL 19674, at *3, 1993 Del.Super. LEXIS 11, at *9–10 ("Where there is sufficient evidence establishing the requisite right of control, the trier of fact may find that the physician is an agent of the hospital and thus impose vicarious liability on the hospital.").

clusions, state constitutional policy favoring jury determination of the facts and this Court's precedent both demand a jury, rather than a judicial, resolution. Therefore, we must find that the trial judge abused her discretion by setting aside the first jury's factual findings and verdict.

### B. The Prejudicial Effect Of Defense Counsel's Statements

■ The Superior Court also granted a new trial *sua sponte*, reasoning that several credibility-based defense-counsel remarks, although contemporaneously disregarded, unfairly prejudiced Morant. After reviewing defense counsel's closing statements, in accordance with our holding in *DeAngelis v. Harrison*,[17] we agree that the remarks improperly constituted counsel's view of witness credibility. Counsel, however, directed his comments at Morant's medical experts and the issue of damages, not the issue of the relationship between the driver and Lang.[18] Thus, the factfinder's crucial liability determination in this case would not have been affected by the offending comments.[19] Because the first jury found no agency relationship, and therefore never had occasion to address damages, it is unlikely that Lang's counsel's improper comments relating to the issue of damages prejudiced Morant.[20] Conversely, the trial judge's decision to set aside the jury verdict did fundamentally prejudice Lang. We therefore find that the trial judge abused her discretion by ordering a new trial on this basis *sua sponte*.

### III.

We are mindful that this litigation is marked by a lengthy and convoluted procedural history, and is complicated factual-ly by the driver's anonymity. Confronted with this confusing scenario, drawn out over a period of four years, we can understand the trial judge's frustration over the parties' inability to find "Lewis." Ultimately, however, we must conclude that the trial judge's original instinct to send the agency question to the jury was correct.

The judgment of the Superior Court ordering a new trial, all subsequent rulings, and the second jury verdict are **VACATED**. We therefore **REMAND** with instructions to reinstate the original jury verdict and enter judgment for Lang. Jurisdiction is not retained.

---

17. 628 A.2d 77 (Del.1993).

