**REINCO, INC., Appellant Defendant, Below,**

v.

**Gary THOMPSON, Appellee Defendant, Below.**

No. 197, 2005.

Supreme Court of Delaware.

Submitted: June 28, 2006.
Decided: Aug. 17, 2006.

William J. Cattie, III, Rawle & Henderson, LLP, Wilmington, Delaware, for appellant.

Shakuntla L. Bhaya, Doroshow, Pasquale, Krawitz & Bhaya, Wilmington, Delaware, for appellee.

Before STEELE, Chief Justice, HOLLAND, BERGER, JACOBS and RIDGELY, constituting the Court en banc.

STEELE, Chief Justice.

On May 18, 1999, Gary Thompson, the plaintiff below and the appellee here, operated a twenty-eight year old Reinco, Inc. manufactured hydroseeder. An upright pipe on the hydroseeder broke during the operation causing a "slurry" of water, mulch, and seed to exit the pipe rapidly. The break caused Thompson to fall to the ground eleven feet below and suffer serious injury. Thompson brought suit alleging that Reinco negligently designed and manufactured the hydroseeder. The case

went to a trial before a jury. In response to a question on a special verdict form, the jury found that Reinco did not act negligently in any respect.

Thompson filed a Motion for a New Trial claiming, among other things, that the trial judge's end of trial ruling removing Thompson's alleged comparative negligence from the jury's consideration was inadequate to avoid jury confusion over the role of comparative negligence in the case. The trial judge agreed and granted Thompson's Motion for a New Trial.

Reinco appeals that decision. Because the record supports the jury's finding that Reinco was not negligent in the first instance and does not support a finding that the jury's verdict was "clearly" the result of confusion, we find that the trial judge abused her discretion by granting a new trial. Accordingly, we vacate the judgment of the Superior Court and remand with instructions to reinstate the original jury verdict and to enter judgment for Reinco.

## I.

### A. Facts

Martom Landscaping employed Thompson. Martom owned a hydroseeder that Reinco manufactured in 1971. This hydroseeder mixed water, mulch, and seed in a 1500 gallon tank until it formed a "slurry." To apply the "slurry" to an area, an individual stood on the hydroseeder's platform, or operating deck, and used a spray nozzle. The spray nozzle was attached to an upright pipe on the operating deck that moved the "slurry" from the 1500 gallon tank. The upright pipe on the operating deck was "Schedule 40 pipe" made of carbon steel.

On May 18, 1999, Thompson operated the hydroseeder. Thompson was working

with William Wilson, Mark Thompson,[1] and Howard Mahan. While Thompson was standing on the operating deck,[2] the upright pipe on the operating deck broke, causing the "slurry" to rapidly flow out of the pipe. The slurry rushed out of the broken pipe, went thirty feet in the air, and caused Thompson to fall to the ground eleven feet below. Thompson suffered permanent impairment to both of his feet as a result of the fall. Thompson brought suit against Reinco for negligently designing and manufacturing the hydroseeder and the case went to a trial before a jury.

## B. Procedural History

At trial, the primary issue relevant to this appeal was whether the upright pipe broke because of Reinco's negligent manufacture or design. Thompson's expert, Colberg, testified, among other things, that Reinco negligently designed the hydroseeder by using "Schedule 40" carbon steel for the upright pipe rather than stainless steel.[3] Reinco's expert, Clauser, testified that there were several "downsides" to using stainless steel,[4] and that Reinco did not negligently design the hydroseeder by using carbon steel for the upright pipe because "the engineering turned out to be a fail safe part, a part that would leak before it would break and tell you that it was wearing out."

As a part of its defense, in addition to simply denying that it acted negligently in

---

1. To avoid confusion, we always refer to Mark Thompson by his full name. All references to "Thompson" are to plaintiff-appellee, Gary Thompson.

2. At trial, the parties disputed Thompson's *actions on the operating deck immediately* before the upright pipe broke. The parties appeared to agree that the fact that a clog may have appeared alone would not cause the pipe to break. Wilson, whose deposition testimony was admitted at trial, claimed that Thompson went to the operating deck to remove a clog from the upright pipe. Thompson denied that he was removing a clog. Mark Thompson and Mahan testified that they were performing other work on the job site and did not witness the accident.

3. Thompson's expert stated:

   I have five opinions, if I may read them, save doing this from memory. Mr. Gary Thompson was injured while operating a Reinco 1500 Hydroseeder. Mr. Thompson's actions were reasonable and foreseeable to Reinco and not a cause of his injuries.

   Number 2, Reinco failed to design a proper support system for the vertical spray pipe on the subject hydrograsser. When the sub pipe failed due to internal corrosion it burst and struck Mr. Thompson causing him to fall off the machine and caused him to be injured. The design of the spray pipe system is unreasonably dangerous, defec-

tive, unsafe for intended use and was a cause of Mr. Thompson's injury.

   Number 3, Reinco failed to properly analyze the effects of corrosion due to stress and flow characteristics of the Schedule 40 black pipe to a point where it could not support the load it was subjected to. Reinco's *improper material selection for the sub pipe* rendered the system unreasonably dangerous, defective, unsafe for intended use and cause for Mr. Thompson's injury.

   Number 4, Reinco failed to properly design the transition in the joint in the spray pipe to eliminate turbulence, even though they knew of its erosive effects. Turbulence contributed to the failure of the spray pipe T joint design [sic] was defective and was a cause of Mr. Thompson's injury.

   Number 5, Reinco failed to determine design life for sub pipe and recommended operator's schedule for replacing. Failed to post this in the operator's manual and subject hydrograsser. Reinco's failure to warn and instruct made the spray system unreasonably dangerous, defective, unsafe for use and cause for Mr. Thompson's injury.

4. Clauser testified that one of the downsides to using stainless steel is a "phenomenon called galvanic erosion," and also explained the difficulty that phenomenon presented for using stainless steel for the upright pipe in this case.

any way, Reinco wanted the jury to infer that Thompson himself acted negligently because he fell while carelessly removing a clog in the upright pipe. Reinco wanted to develop this theory based on coworker Wilson's deposition testimony that Thompson was on the operating deck removing a clog immediately before the accident. Reinco's counsel attempted to inject the clog issue into the trial during his crossexamination of coworker Mahan. Counsel asked Mahan, "Would you get clogs in the area of the tower that is shown in exhibit 4?" Thompson's counsel objected, claiming that clogs were not an issue in the case because both Thompson's and Reinco's experts agreed that the mere existence of a clog would not have caused the pipe to break. Reinco's counsel explained that he was not offering the evidence to show that the clog itself caused the pipe to break, rather, he wanted to suggest that Thompson slipped when he removed the clog and grabbed onto the upright pipe to catch his fall, causing the pipe to break.[5]

The trial judge, hesitant to allow Mahan to be questioned about clogs, stated:

Here is the problem, counsel, without knowing all the facts through all the testimony, because obviously they haven't come in, it is difficult for me to decide the 403 analysis in a vacuum. I'm concerned for potential for confusion with the jury and I'm concerned about the prejudicial nature of this testimony, because it is the only thing that injects clogs into the case. I don't draw the inference and I don't believe it would be fair to the jury to draw the inference that a clog in the hose existed because there has been no expert testimony on that point. I'm going to allow your inquiry into this area. *If I get the sense that the jury is getting confused I will stop the questioning and try to craft a curative.*

I will tell you that I made an error on the 403 analysis as the rest of the testimony unfolds and expert opinions come in. I won't hesitate to rectify anything that this will cause with the jury reaching a verdict not in favor of the plaintiff. I know that this is little solace for the plaintiffs. Although, it is hanging by a thread, [counsel] gets to question about this. It is relevant that Mr. Wilson says he heard the plaintiff say it. It is not inadmissible hearsay, it is unfortunate that Mr. Wilson isn't subject to vigorous cross-examination on this issue. I have a lot of reservation about it coming in, but at this point, based on what I know so far it would be error not to. So I'm going to give you a leash. I do not want any suggestion, no matter how subtle, from the defense that somehow you are going to be able to prove that the clog caused what transpired here. There is no testimony to support that here. The only relevance of the clog is to explain

5. The argument that removing the clog caused Thompson to slip was based on coworker Wilson's testimony: Wilson stated that to remove a clog one would remove the spray nozzle from the top of the upright pipe and then "jam" a metal rod into the pipe. Wilson further suggested that Thompson did this while the engine was running. Based on this testimony, Reinco claimed that Thompson successfully removed the clog, and because the engine was still running, the slurry rapidly left the top of the pipe. The slurry caused Thompson to slip and he grabbed on the upright pipe, causing it to break. Thompson then fell to the ground eleven feet below. Reinco further argued that this testimony was consistent with their expert's opinion that the pipe "was pulled off by an unusual force at the top of the tower." Thompson's counsel conceded that a slurry would rapidly exit if a person unplugged a clog by jamming a rod into the pipe with the engine running, but contended, even in the face of Wilson's statement to the contrary, that there was no evidence that a clog in fact existed.

your theory of why he was up there and why he caused this accident.

Reinco's counsel then continued to question Mahan. Mahan acknowledged that he had experienced clogs and that when that happened he would clear the clog by removing the nozzle and placing a metal rod into the pipe.[6]

Later in the trial, the trial judge again returned to the issue raised by the specter of the clog. On crossexamination, Reinco's counsel asked Thompson the following: "What could you do to get rid of that jet clog?" Thompson's counsel objected, claiming that the question "went beyond the scope of direct."[7] The trial judge called counsel to side bar and stated:

> This is what my concern is, you are injecting, repeatedly, references to clogs. And my idea of limiting the evidence to allow you to say what Wilson said the plaintiff told him did not mean to open the door to sending the jury off wondering if there is a clog. I'm sitting here listening to the repeated references to clogs and I'm worried sick that the jury is focusing on that. And the only relevance is, as you initially proffered, that puts him on top of the truck. I think prejudicial value is getting greater and greater. I want you to stick to what Wilson said and not hypothetical situations.

The trial judge again did not find it necessary to give a cautionary or limiting instruction, nor did Thompson's counsel ask for one. Reinco's counsel did not ask Thompson any further questions about clogs.

At the close of the evidence, Thompson moved for a directed verdict on the issue of Thompson's comparative negligence. The trial judge granted Thompson's motion and "declined to charge the jury on comparative negligence with respect to the plaintiff."[8]

When instructing the jury, the trial judge properly defined negligence and clearly explained that Thompson's alleged comparative negligence was no longer an issue in the case. The trial judge then sent the jury to deliberate and gave the jury a special verdict form with the following questions: (1) Do you find that the Defendant Reinco, Inc., was negligent?, (2) Do you find that Martom was negligent and the Martom's negligence was a superseding cause of plaintiff's injuries?, (3) Do you find that Reinco, Inc., was negligent in a manner proximately causing plaintiff's injuries?, (4) State the full amount of your award of damages to the plaintiff, Gary Thompson. The jury answered the first question "No." That response obviated the need to answer the remaining questions.

After the jury's January 28, 2005 finding that Reinco did not negligently design or manufacture the hydroseeder, Thompson's counsel sent a letter to the trial judge requesting permission to exceed the normal four page limit for a Motion for a New Trial. The trial judge granted the extension and also stated, "please specifically address *inter alia* the issue of whether plaintiff's comparative negligence (which was later dismissed by the court) confused

---

6. Notably, the trial judge did not find it necessary to give a *sua sponte* curative instruction during Mahan's testimony. Thompson's counsel never requested that she do so.

7. Thompson's counsel did not object on grounds of unfair prejudice or confusion of the issues pursuant to D.R.E. 403.

8. Thompson also requested a directed verdict on the issue of whether Martom's negligence was a superseding intervening cause. The trial judge denied the motion for a directed verdict on that issue.

the jury." On February 11, 2005, Thompson filed his Motion for a New Trial. The trial judge granted Thompson's motion in a letter opinion:

I have reviewed the plaintiff's Motion for a New Trial and the defendant's opposition thereto. I recall the trial of this case very well. I had a concern when the jury returned its verdict, and I have a greater concern now, that the jury was confused by the Court's ruling after all the evidence was submitted that as a matter of law plaintiff was not comparatively negligent. I am convinced that a new trial is warranted.

My initial concern was heightened after reviewing the instruction on misuse and superceding cause and the testimony of Mr. Wilson and Mr. Mahan (over plaintiff's repeated objections) about clogs and the procedure for removing clogs. The Court has serious reservations that the mere mention of clogs may have convinced the jury, without adequate factual basis, that the plaintiff may have been attempting to clear a clog from the pipe when it fractured, or thereby caused it to fracture.

Given the mechanics of trial, the Court was required to issue multiple rulings with respect to different witnesses at various points throughout the trial on the clog issue and this, coupled with the inherent unpredictability of witness testimony (despite counsel's best efforts to prepare their witnesses and the Court's efforts to limit their testimony to only admissible evidence), resulted on more than one occasion in irrelevant and prejudicial testimony about clogs being presented to the jury. The Court believes this testimony created an improper inference of comparative negligence in the jury's mind.

The Court is also concerned that the testimony offered by Mr. Clauser about the replaced deck and the condition of the [supply] pipe (which he never examined),[9] caught the plaintiffs by surprise because it was not part of his original expert opinion, and was highly prejudicial, not very probative, and very confusing.

In light of the confusion caused by the introduction of evidence on comparative negligence, the Court's multiple rulings during trial on the issue of clogs and the resultant prejudicial piecemeal testimony regarding the same, and Mr. Clauser's testimony, this Court is convinced that it must grant a new trial to prevent injustice. See *McCloskey v. McKelvey*, 174 A.2d 691 (Del.Supr.1961). Plaintiff's Motion for a New Trial is therefore GRANTED.[10]

On April 21, 2005, Reinco filed a motion for certification of an interlocutory appeal challenging the trial judge's ruling granting Thompson's Motion for a New Trial. The trial judge entered an order certifying the interlocutory appeal, which we accepted on May 9, 2005.

## II.

Reinco contends that the trial judge erred by granting Thompson's Motion for a New Trial. Thompson relies on the last paragraph of the trial judge's letter opinion to contend that the trial judge gave three valid reasons justifying her decision to grant a mistrial: (1) testimony suggesting that Thompson acted negligently con-

---

9. Clauser thoroughly examined the upright pipe that broke which allegedly caused Thompson's injuries. He did not examine the supply pipe. The trial judge was obviously referring to testimony about the supply pipe.

10. We cited the entire ruling of the trial judge given the importance in this appeal of her reasons for granting a new trial.

fused the jury; (2) irrelevant and prejudicial testimony on the clog issue and the resultant piecemeal testimony about the clog confused the jury; and (3) Clauser's testimony confused the jury.

Reading the letter opinion in its entirety, we find that reasons (1) and (2) are essentially the same because the only evidence cited in the trial judge's opinion arguably supporting a comparative negligence claim is the inference from Wilson's testimony that while attempting to remove a clog, Thompson must have slipped, grabbed the upright pipe, and caused it to break.[11] The trial judge apparently assumed the jury disregarded her instruction that any contention that Thompson acted negligently was out of the case. Interestingly, the trial judge's opinion does not address the significance of the jury's rejection of the threshold question specifically directed to them concerning Reinco's negligence, a necessary predicate to consideration of Thompson's comparative negligence.

■ We review a trial judge's decision granting a Motion for a New Trial for an abuse of discretion.[12] Thus, our inquiry becomes whether the trial judge abused her discretion when she granted Thompson's Motion for a New Trial on the basis that the jury's verdict resulted from confusion about: (1) whether there was a clog, whether the clog caused the pipe to break, the sludge to emit and Thompson to slip and fall, and the relevance of those alleged facts to Thompson's alleged negligence; and (2) Clauser's testimony about the condition of the replacement deck and the supply pipe.[13]

■ The standard for granting a new trial is well settled. "A new trial is warranted only if the jury's verdict is 'clearly the result of passion, prejudice, partiality, corruption,'[14] [or confusion,][15] or the evi-

---

11. The conclusion that comparative negligence and the clog issue are subsumed is also evident from the trial judge's earlier statement in her letter opinion: "The Court believes this testimony [clog testimony] created an improper inference of comparative negligence in the jury's mind."

12. *Lang v. Morant*, 867 A.2d 182, 185 (Del. 2005).

13. To succeed in this appeal Reinco must demonstrate that both of the trial judge's reasons for granting a new trial are erroneous. *See Id.*

14. *Id.* at 185 (citing *Walker v. Campanelli*, 860 A.2d 812, 2004 Del. LEXIS 462 (Del.2004)(ORDER)).

15. While we have at least acknowledged that a new trial is warranted if the jury's verdict was *clearly* the result of jury confusion, our case law is limited on the issue. *Pesta v. Warren*, 888 A.2d 232, 2005 Del. LEXIS 510, at *4 (Del.Supr. Dec. 14, 2005)(ORDER)(affirming the trial judge's denial of a Motion for a New Trial where the plaintiff-appellant claimed that the jury's verdict was a result of

confusion). We were unable to find a case in any jurisdiction affirming a trial judge's decision to grant a new trial based on her speculative conclusion that the jury was confused. Other jurisdictions appear to require some evidence, beyond a "gut feeling," that the jury was in fact confused in order to set aside a verdict supported by the evidence. For example, cases where the jury sends a note to the judge expressing confusion or the jury returns an inexplicably inconsistent verdict might be sufficient to warrant granting a motion for a new trial on the basis of jury confusion. *See Blancha v. Raymark Industries*, 972 F.2d 507 (3d. Cir.1992)(reversing the District Court's decision to grant a new trial because the record did not support the District Court's finding that the jury's verdict was the result of confusion or prejudice); *Nissho–Iwai Co. v. Occidental Crude Sales, Inc.*, 729 F.2d 1530, 1538 (5th Cir.1984)(the trial judge properly granted a new trial when the foreman of the jury "admitted that he was confused by the instructions."); *Taylor v. Airborne Freight Corp.*, 155 F.Supp.2d 287, 291 (E.D.Pa. 2001)(A court may grant a new trial when the verdict is inconsistent and reflects confusion on the part of the jury); *Beyrand v. Kelly*, 434

dence 'preponderates so heavily against the jury verdict that a reasonable jury could not have reached the result.' " [16]

### A. The facts do support the jury's verdict

■ We preface our discussion by noting that the evidence supported the jury's verdict here, and "historically, the trial judge's inherent power to grant a new trial has been tempered by the deference given to a jury's findings" as required by the Delaware Constitution.[17] Little evidence supported Reinco's alleged negligent design and manufacture. That issue essentially focused on which expert was more credible. The experts' respective testimony could have convinced a reasonable juror that Clauser was more qualified than Colberg to address the factual issues related to negligent manufacture and design. Clauser was a metallurgical engineer who had extensive experience designing large industrial type machines.[18] Colberg, was in contrast, a mechanical engineer with no experience in designing large industrial machines. Moreover, Colberg did not have Clauser's extensive experience with the metallurgical issues that arise when stainless steel was used for only portions of large industrial machines.[19] Given the credentials of the parties' respective experts, the jury could have chosen to accept Clauser's opinion that the "Schedule 40" carbon steel pipe was a fail safe product that required no warnings because it would leak before breaking completely and to reject Colberg's opinions. Thus, there is credible testimony supporting the jury's finding that Reinco did not negligently design or manufacture the hydroseeder.

### B. Introduction of evidence of a clog, a broken pipe and Thompson's comparative negligence

■ We find that the trial judge abused her discretion by granting Thompson's Motion for a New Trial on the ground that merely hearing Wilson's evidence that suggested that Thompson tried to remove a clog, slipped, and broke the pipe by grabbing it would have necessarily confused the jury. The record simply does not support her conclusion that the jury's verdict "clearly" resulted from confusion. The trial judge's evident belief that the jury con-

Pa. 326, 329, 253 A.2d 269 (Pa.1969)("[G]ranting of a new trial by the court below based on some vague notion of general jury confusion was an abuse of discretion.").

16. *Lang,* 867 A.2d at 185 (citing *Storey v. Camper,* 401 A.2d 458, 465 (Del.1979)).

17. *Id.* (citing *Amalfitano v. Baker,* 794 A.2d 575, 577 (Del.2001); DEL. CONST. art. IV, § 11(1)(a) ("On appeal from a verdict of a jury, the findings of the jury, if supported by the evidence, shall be conclusive.")).

18. Clauser explained his role as a metallurgical engineering:

Metallurgical engineering is an engineering discipline but it specializes in metals and materials, from how you extract them from the ores and convert them into a use-

ful engineering product and then how you—by heat treating, welding, processing, change the properties, change the structures and the rest of the study is how they behave in certain studies. That is the area I had most interest in and worked most of my career in is testing materials and looking at broken and failed materials and trying to figure out why they failed.

19. On cross-examination of Colberg, Reinco's counsel demonstrated that Colberg was less qualified than Clauser in dealing with large industrial machines:

Q: In looking at your resume, you have never designed a product like the hydroseeder; isn't that correct?
A: That's true.
Q: The majority of the products you have designed have been for the consumer market; correct?
A: Yes.

fused the mere presence of a clog with the pipe breaking resulting in Thompson's fall is speculation. The jury never gave any indication that it was confused. The jury never sent a note to the trial judge. It neither rendered an inconsistent verdict, nor rendered a verdict against the great weight of the evidence. The record suggests no basis to conclude that the jury ignored the judge's instruction that Thompson was not negligent as a matter of law. In fact, the jury's response to the special verdict form removed the predicate for them to even consider Thompson's alleged comparative negligence.

Thompson suggests that the trial judge was in the best position to observe the demeanor of the jury and that her statements throughout the trial about the clog evidence indicated that she considered the clog testimony to be confusing to the jury. Thompson ignores the fact that the trial judge stated early on that, "if I get the sense that the jury is getting confused I will stop the questioning and try to craft a curative." Even though the trial judge expressed some speculative concern about the testimony concerning the clog confusing the jury, it is evident that she never got the "sense" that the jury was confused because she never gave a "curative" instruction to put an end to the confusion. Likewise, Thompson must not have believed that the jury was becoming confused because he never requested a cautionary or limiting instruction.

**20.** It is worth remembering that Delaware law presumes that the jury followed the trial judge's instructions. *Fuller v. State,* 860 A.2d 324, 329 (Del.2004) ("It is presumed that the jury complied with the trial judge's instruction."). There is absolutely no indication here that the jury did not follow the trial judge's instructions or misunderstood the special verdict form.

■ Moreover, it is difficult to accept the trial judge's contention that the clog testimony somehow injected contributory negligence into the case and thereby confused the jury about the extent to which Thompson's alleged negligence played any role in the case. We cannot, contrary to Delaware law, assume that the jury ignored the trial judge's instruction that Thompson's comparative negligence was no longer an issue in the case.[20] Furthermore, any speculative confusion could have not affected the jury's verdict here because the jury never reached the issue. Because the jury answered "No" in response to the predicate question of whether Reinco was negligent, and credible evidence supports that finding, the jury would have no reason to consider Thompson's comparative negligence. Put simply, confusion about comparative negligence could not have "clearly" caused the jury's verdict because the jury plainly found no negligence of Reinco to which Thompson's could be compared.

## B. *Clauser's testimony*

■ The trial judge also abused her discretion by granting Thompson's Motion for a New Trial on the alternative ground that Clauser's testimony was misleading, confusing, and prejudicial. Because the trial judge wrote one sentence in her letter opinion on this issue, it is difficult to determine on what basis she concluded that Clauser's testimony caused confusion or unfair prejudice that "clearly" affected the jury's verdict.[21] We interpret her one ex-

**21.** *See supra* p. 9–10. In *Storey,* 401 A.2d at 466, we acknowledged a trial judge's duty to make a clear and complete record when granting a motion for a new trial:

In this jurisdiction the duty to exercise discretion by a trial judge generally includes the duty to make a record to show what factors the trial judge considered and the reasons for his decision. The obvious purpose for the rule is particularly pronounced

planatory sentence to mean that because Clauser testified to something not within his written opinion (the condition of the operating deck and the supply pipe), it somehow created an "injustice" requiring a new trial. The test, however, is "manifest injustice." How Clauser's testimony may have created confusion or prejudice rising to "manifest injustice" is neither present in the trial judge's post trial opinion nor evident in the record.

While Clauser's testimony about the replacement deck and the supply pipe may have been unexpected, it responded to equally unexpected testimony by Mark Thompson. Mark Thompson testified that when the new operating deck was installed, a hole was cut for the upright pipe and the new operating deck was simply placed over the old decking. Based on photographs that Clauser saw, Mark Thompson's testimony described the impossible. Clauser simply discussed why the pictures showed that impossibility and explained that whoever installed the operating deck would have had to remove the supply pipe below the decking. In doing so, that person would have been able to see the condition of both the supply pipe below the decking, and of the upright pipe above the decking. We cannot understand what unfair prejudice or confusion could have resulted from this testimony and the trial judge has articulated none.

Moreover, though the trial judge suggests that this testimony was somehow prejudicial, we note that it was Thompson's trial counsel who on cross solicited Clauser's opinion that contradicted Mark Thompson's testimony about the replacement operating deck.[22] We also note that Thompson's counsel had an opportunity to ask Clauser if he personally observed the condition of the replacement deck and supply pipe or if his opinion was based solely on observing pictures and others' testimony. In sum, we cannot accept the trial judge's unsupported conclusory statement that Clauser's testimony was "highly prejudicial, not very probative, and very confusing." The record suggests that Clauser is a highly qualified expert who reviewed all of the relevant information in this case. His testimony certainly constitutes credible evidence. After careful review of Clauser's testimony, we find nothing to suggest that the jury's verdict "clearly" constitutes a "manifest injustice" arising from unfair prejudice or confusion resulting from that testimony.

### Conclusion

The judgment of the Superior Court ordering a new trial is **VACATED**. We therefore **REMAND** with instructions to reinstate the original jury verdict and enter judgment for Reinco.

when a motion for a new trial in a jury case is granted . . .

22. Reinco's counsel did not ask Clauser about the replacement deck on direct examination. The following exchange took place between Thompson's counsel and Clauser during crossexamination:

Q: Now, were you aware that the testimony in this case was that a prefabricated piece of diamond plate with a hole cut in it for the flange and the spray boom was dropped down over the top of the spray boom?

A: I have heard that was testified to. It is not physically possible, but I've heard that, yes.

On re-direct, Reinco's counsel then asked Clauser to explain why, based on the photos he viewed, Mark Thompson's testimony about the replacement deck was impossible.