# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | |
|---|---|
| PAULA HARRIS | ) |
| | ) |
| Plaintiff, | ) |
| | ) C.A. No. N15C-06-216 PEL |
| v. | ) |
| | ) |
| BOSTON SCIENTIFIC | ) |
| CORPORATION (d/b/a | ) |
| MANSFIELD SCIENTIFIC, INC. & | ) |
| MICROVASIVE INC.), | ) |
| | ) |
| Defendant. | ) |

Submitted: October 16, 2017
Decided: January 2, 2018

## CORRECTED OPINION

Robert J. Leoni, Esq., Shelsby & Leoni PA, Christine V. Clarke, Esq., Chris A. Gomez, Esq., Kline & Specter, PC Attorneys for Plaintiff Paula Harris

Colleen D. Shields, Esq., Eckert Seamans Cherin & Mellott, LLC Attorneys for Defendant Boston Scientific Corporation

**JOHNSTON, J.**

## PROCEDURAL CONTEXT

Before the Court are post-trial motions in a products liability case. Plaintiff Paula Harris alleged that Defendant Boston Scientific Corporation ("Boston Scientific") designed, manufactured, distributed, and sold a pelvic mesh device, the "Lynx," that injured Harris. After a nine-day trial, the jury returned a verdict in favor of Boston Scientific.

Harris now brings Motions for a New Trial and to Set Aside Verdict. She

argues that the verdict went against the great weight of the evidence and that various Court rulings prejudiced the jury against Harris.

## MOTION FOR NEW TRIAL STANDARD

To warrant granting a motion for a new trial, "the verdict must be manifestly and palpably against the weight of the evidence or for some reason, or combination of reasons, justice would miscarry if it were allowed to stand."[1] Delaware law gives great deference to jury verdicts.[2] "In the face of any reasonable difference of opinion, courts will yield to the jury's decision."[3] When the court considers a motion for a new trial, "there is a presumption that the jury verdict is correct."[4]

## ANALYSIS

### The Jury's Verdict Was Not Against the Great Weight of the Evidence

Harris argues that the jury's verdict was contrary to the great weight of evidence in two respects. First, she claims the great weight of the evidence showed the Lynx was unreasonably dangerous, based primarily on testimony that the Lynx's complication rate was 4.2%. Second, Harris claims the great weight of the evidence showed that Boston Scientific acted unreasonably in the design, distribution, and sale of the Lynx device, because of evidence regarding the marketing and testing of

---

[1] *Broderick v. Wal-Mart Stores, Inc.*, 2002 WL 388117, at *1 (Del. Super.).
[2] *Brittingham v. Layfield*, 2008 WL 4946217, at *3 (Del.).
[3] *Id.*
[4] *Daub v. Daniels*, 2013 WL 5467497, * 1 (Del. Super.).

2

the Lynx.

Evidence that the Lynx's complication rate was 4.2% did not require the jury to find that the device was unreasonably dangerous. The jury heard evidence that the 4.2% figure only represented the occurrence of vaginal erosion generally, while other experts opined that the risk the device posed for the injury Harris actually suffered—urethral erosion—was less than 1%.

Evidence that Boston Scientific did not perform clinical trials prior to placing the Lynx on the market is also not dispositive of whether the Lynx was unreasonably dangerous; or of whether Boston Scientific was negligent in the design, distribution, and sale of the Lynx. The jury heard extensive testimony as to whether it was reasonable for Boston Scientific to rely on the results of other similar products' clinical testing before selling the Lynx. The jury considered the weight to be given to the evidence, and made credibility determinations. Resolving these issues was well within the jury's discretion.

Harris also argues that Boston Scientific's comments in opening statement and closing argument regarding Harris's doctor's conduct confused the jury. Harris asserts that because the doctor's conduct was irrelevant as to whether the Lynx itself was unreasonably dangerous. However, Harris made no objection to these comments at trial, thereby waiving this issue. In any event, both parties informed the jury that the doctor bore no fault deciding to use the Lynx. The jury was

instructed that the doctor's conduct was not relevant to the ultimate issue of dangerousness.

### The Court's Decisions Did Not Prejudice Harris

Harris also argues that two rulings caused her prejudice, warranting a new trial. Specifically, Harris points to the Court's refusal to publish an image from a patent application and the Court's inclusion of a jury instruction on the learned intermediary doctrine.

Harris argues that the Court's decision not to allow her to publish an image of a patent application prevented her from performing an effective cross-examination of a Boston Scientific expert witness. However, the Court allowed Harris to attempt to form a foundation to publish the image. Harris asked the witness questions regarding the image it wished to publish and the witness responded. That exchange effectively described the image. The witness did not agree that the image was similar to the Lynx. Harris suffered no prejudice when she was not permitted to publish an image a witness described to the jury as being dissimilar to the Lynx.

Although Harris does not specify which instruction she objects to, the instruction titled "Warning to Dr. Burton" most closely fits her argument. It stated:

> The adequacy of Boston Scientific Corporation's warnings about the risks of the Lynx mid-urethral sling to Ms. Harris' surgeon, Dr. Burton, are not at issue in this case.

Harris argues that this instruction was irrelevant because there was no failure

4

to warn claim and unnecessary because Harris only briefly testified as to what she would have wanted to know from Dr. Burton. Harris claims this lack of relevance was confusing to the jury.

The Court is not persuaded by Harris's position. This instruction served only to clarify to the jury the proper scope of its deliberations. The instruction was not irrelevant—Harris did describe what she would have done if Boston Scientific had shared certain facts with Dr. Burton.[5] As the Court ruled at trial, "this one-sentence instruction is necessary in order to prevent the jury from considering whether or not warnings were given as part of the evidence."[6] Harris does not argue that the instruction was an improper statement of the law. She does not argue that the jury should have considered the warnings to Dr. Burton. Harris only conclusorily argues that an instruction to the jury not to consider a non-issue in the case was confusing. Such a bare "speculative conclusion that the jury was confused" cannot be the basis for a new trial.[7]

## CONCLUSION

Harris's Motions for a New Trial Pursuant to Delaware Superior Court Civil Rule 59 and to Set Aside Verdict are hereby **DENIED.** The Court finds that the

---

[5] Sept. 25, 2017 Trial Tr., 28:15–20 ("Q. If Boston Scientific told Dr. Burton those facts and he shared that with you, what would you have done? A. I probably would have asked for a safer option or different second opinion or not have the surgery.").
[6] Sept. 27, 2017 Trial Tr. Transcript 39:4–7.
[7] *Reinco, Inc. v. Thompson*, 906 A.2d 103, 110 n.15 (Del. 2006).

5

jury's verdict was not contrary to the great weight of the evidence and that the Court's rulings did not prejudice Harris.

**IT IS SO ORDERED.**

_____
The Honorable Mary M. Johnston

6